**Guadelupe PEREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00431–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2001.

Kenneth E. Goode, Houston, for appellants.

Carmen Castill Mitchell, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and BAIRD.*

## CORRECTED MAJORITY OPINION

LESLIE BROCK YATES, Justice.

Appellant was charged by indictment with the offense of possession with intent to deliver a controlled substance, namely cocaine. The indictment alleged two prior felony convictions for the purpose of enhancing the range of punishment. A jury

* Former Judge Charles F. Baird sitting by assignment.

convicted appellant of the charged offense. The trial court found the enhancement allegations true and assessed punishment at forty years confinement in the Texas Department of Criminal Justice—Institutional Division and a fine of $5,000. Appellant raises four points of error on appeal. We affirm.

Houston police officer Frank Scoggins received a tip from a confidential informant that appellant was selling drugs from her home. Scoggins secured a warrant for appellant's arrest and the search of her home. Prior to executing that warrant, Scoggins and several other plain clothes officers maintained surveillance on the residence and saw appellant depart in a vehicle driven by her boyfriend, Romero Ramos. The officers followed the vehicle a sufficient distance to insure that anyone remaining in the house would not know appellant was being stopped. Scoggins then ordered a patrol officer to stop the vehicle in which appellant was traveling. Scoggins approached appellant, presented her with a copy of the warrant, informed her of her legal rights, and took her and Ramos into custody. Both were transported to the residence. Scoggins searched the home and discovered cocaine and marijuana in the master bathroom.

In her case-in-chief, appellant called Ramos as a witness. He testified the drugs recovered in the search of the residence were his and that he admitted possessing the contraband to a plain clothes officer following the search of the residence. Ramos further testified appellant knew nothing of the contraband.

■ In her first point of error, appellant claims the trial court erred in refusing to allow appellant to present her opening statement at the close of the State's case-in-chief. The record shows that after the State made its opening statement, the trial court asked defense counsel if he would like to make an opening statement. De-

fense counsel replied, "We would waive at this time, reserve the right for later." The court responded, "You need to make it now." Defense counsel then stated, "All right. Then we would waive." After the State presented its evidence and rested, the trial court asked defense counsel if he had any witnesses. Defense counsel responded, "Yes. Did the Court want me to call witnesses now?" The court responded, "Yes." Appellant did not request to make her opening statement at the close of the State's evidence.

■ Article 36.01 of the Texas Code of Criminal Procedure provides that in a jury trial a defendant's opening statement can follow the presentation of the State's evidence or follow the State's opening statement. *Moore v. State,* 868 S.W.2d 787, 789 (Tex.Crim.App.1993). A defendant can waive this right if she does not timely request an opening statement. *Id.* Appellant waived her right to an opening statement in this case. Initially, when told he must make his statement before the State presented its evidence, defense counsel stated, "All right. Then we would waive." Appellant's explicit waiver of her request for an opening statement precludes appellant from resurrecting this request on appeal. *See Atkins v. State,* 919 S.W.2d 770, 775 (Tex.App.—Houston [14th Dist.] 1996, no pet.) (Defendant's explicit waiver of objection to State's use of peremptory challenge precluded *Batson* challenge on appeal). Because error was waived, appellant's first point of error is overruled.

■ In her second point of error, appellant claims the trial court erred in denying a mistrial when the State argued evidence outside the record. On direct examination, the State asked Officer Scoggins what information he had received about the defendant prior to executing the search warrant. Officer Scoggins responded that he received information that the defendant was

dealing cocaine. The trial court sustained appellant's hearsay objection. In closing argument, the prosecutor stated, "Officer Scoggins got up here and testified that he had an informant who told him that this defendant deals drugs." Appellant objected, requested an instruction to disregard, and moved for a mistrial. The trial court granted the instruction to disregard, but denied the motion for mistrial.

■■■ If an instruction is given and the court denies the defendant's motion for mistrial, error results only when the argument is extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that its prejudicial effect could not reasonably be removed from the minds of the jurors by the instruction given. *Washington v. State*, 822 S.W.2d 110, 118 (Tex.App.—Waco 1991), *rev'd on other grounds*, 856 S.W.2d 184 (Tex.Crim.App.1993). It is considered a sufficient response to most well-founded objections that the material be withdrawn from jury consideration, if necessary, and that jurors be admonished not to consider it during their deliberations. *Barber v. State*, 757 S.W.2d 359, 362 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861 (1989). The adversary system thus depends on a belief that the declaration of a mistrial ought to be an exceedingly uncommon remedy for the residual prejudice remaining after objections are sustained and curative instructions given. For this reason, our system presumes that judicial admonishments to the jury are efficacious. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim.App.1988). Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex.Crim.App.1992), *cert. denied*, 508

U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). Here, the statement was not so inflammatory that an instruction to disregard would not have cured any prejudicial effect. Appellant's second point of error is overruled.

In her third and fourth points of error, appellant claims she received ineffective assistance of counsel. In the third point of error, appellant claims her counsel was ineffective in failing to cite statutory grounds for the exclusion of testimony of unrecorded custodial statements. In the fourth point of error, appellant claims her counsel was ineffective when he mistakenly requested a lesser offense instruction on less than one gram rather than four to two hundred grams.

■■■ The standard under which we review a claim of ineffective assistance of counsel was established in *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this standard, the reviewing court must first decide whether trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. If counsel's performance fell below this standard, the reviewing court must decide whether there is a "reasonable probability" the result of the trial would have been different but for counsel's deficient performance. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A defendant is entitled to reasonably effective counsel, not perfect counsel judged by hindsight; therefore, more than isolated errors and omissions will be needed to demonstrate ineffective assistance of counsel. *See Lanum v. State*, 952 S.W.2d 36, 40 (Tex.App.—San Antonio 1997, no pet.).

■■■ In any case analyzing the effective assistance of counsel, we begin with the strong presumption that counsel was

competent. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson*, 877 S.W.2d at 771. The appellant has the burden of rebutting this presumption by presenting evidence illustrating why trial counsel did what he did. *Id.* The appellant cannot meet this burden if the record does not specifically focus on the reasons for the conduct of trial counsel. *Stults v. State*, 23 S.W.3d 198, 208 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd). This kind of record is best developed in a hearing on an application for a writ of habeas corpus or a motion for new trial. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Crim.App.1998) (per curiam).

■ When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court. *See Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.—Houston [1st Dist.] 1996, no pet.). An appellate court will not speculate about the reasons underlying defense counsel's decisions. For this reason, it is critical for an accused relying on an ineffective assistance of counsel claim to make the necessary record in the trial court. *Thompson*, 9 S.W.3d at 814.[1]

The Court of Criminal Appeals has recently re-affirmed its reluctance to reverse on ineffective assistance of counsel when there is no record of trial counsel's reasoning. In *Ex parte Varelas*, 45 S.W.3d 627 (Tex.Crim.App.2001), the court reversed on applicant's claim of ineffective assis-

tance of counsel in a habeas petition. Varelas claimed his trial counsel was ineffective for failing to object to the omission of an extraneous offense instruction in the court's charge. Varelas' habeas petition contained an affidavit from his trial counsel stating that counsel did not have a strategy for failing to request the instruction, but simply overlooked it. On direct appeal, however, without such an affidavit, the court held:

> In light of the number of ways and the degree to which a defendant can suffer harm from the admission of extraneous offense evidence, we have trouble understanding why trial counsel did not request a burden of proof or limiting instruction regarding these offenses. However, the bare record does not reveal the nuances of trial strategy. Further, to hold trial counsel's actions (or inaction) ineffective in the instant case would call for speculation and such speculation is beyond the purview of this Court. Rather, because of the strong presumptions that trial counsel's conduct falls within the wide range of reasonable professional assistance and that such conduct might be sound trial strategy, we must conclude, in light of an otherwise silent record, that appellant failed to meet his burden of showing that his trial counsel's assistance was ineffective.

*Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim.App.2001) (quoting *Varelas v. State*, No. 72,178, slip op. at 8 (Tex.Crim.App. March 4, 1997) (not published)).

■ The record in this case is silent as to why appellant's trial counsel objected on constitutional grounds to the State's use of

---

1. The dissent states that we "prematurely" turn to the question of strategy. Op. at 736. The dissent asserts we must first determine whether trial counsel's conduct was deficient before looking to strategy. Before we reach the issue of counsel's deficient performance, however, we must determine whether the record in this case is adequate to evaluate counsel's performance. *See Stone v. State*, 17

appellant's statement. Therefore, appellant has failed to rebut the presumption that trial counsel's actions resulted from a reasonable decision. Further, the record is silent as to why counsel requested a lesser included offense instruction for less than one gram of cocaine. Counsel's allegedly improper actions do not amount to an error sufficiently egregious to satisfy the first prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant's third and fourth points of error are overruled.

The judgment of the trial court is affirmed.

Corrected dissenting opinion by Justice CHARLES F. BAIRD.

CHARLES F. BAIRD, Justice (Assigned), dissenting.

The third point of error contends trial counsel was ineffective for lodging an objection on constitutional grounds rather than statutory grounds to prevent the admission of appellant's oral statement. For the following reasons, I believe this point should be sustained and, therefore, I respectfully dissent.[1]

## I. The Majority's Holding

The standard by which we review a claim of ineffective assistance of counsel was established in *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 2062–2063, 80 L.Ed.2d 674 (1984). Under this standard, the reviewing court must first determine whether trial counsel's representation fell below an *objective* standard of reasonableness under prevailing professional norms. If counsel's performance fell below this standard, the reviewing court must decide whether there is a "reasonable probability" the result of the trial would have been different but for

S.W.3d 348, 350 (Tex.App.—Corpus Christi 2000, pet. ref'd).

1. I also dissent to the resolution of the first point of error. Following the State's opening statement, the following exchange occurred:

TRIAL COURT: You wish to make an opening statement, [defense counsel]?
DEFENSE COUNSEL: *We would waive at this time, reserve the right for later.*
TRIAL COURT: *You need to make it now.*
DEFENSE COUNSEL: *All right. Then we would waive.*

Defense counsel has a right to make an opening statement either following the State's opening statement *or* prior to presenting the defense's case-in-chief. *See* Tex.Code Crim. Proc. Ann. art. 36.01; *Moore v. State*, 868 S.W.2d 787, 791 (Tex.Crim.App.1993) ("Where the State does proffer an opening statement, the defendant may, at his option, demand oral statement immediately after the State's opening statement or after presentation of the State's case in chief."). Therefore, the trial court erred in requiring defense counsel to make his opening statement immediately after the State's.

I disagree that the error was waived. To support its waiver holding, the majority cites *Moore*, 868 S.W.2d at 789, which in *dicta* recognized the right to an opening statement can be waived if not timely requested. While that simple proposition is no doubt true, that is not the holding of *Moore*, and is wholly irrelevant to the instant case because appellant specifically "reserved" the right to make an opening statement. In *Moore* the State *did not* make an opening statement and the defendant asked to make an opening statement *before* the State presented its case-in-chief. The *Moore* Court held article 36.01 "authorizes the defense to make an opening statement before presentation of the State's case-in-chief only after the attorney representing the State makes the opening statement for the State." *Moore*, 868 S.W.2d at 791 (internal quotations omitted). That holding has absolutely no bearing on the instant case because here the State did make and opening statement and appellant specifically reserved her right to make an opening statement *after* the State's case-in-chief. Therefore, *Moore* is not controlling or even persuasive in resolving this point of error.

Finally, I would find the error was not harmless for the reasons stated in *Twine v. State*, 970 S.W.2d 18, 21 (Tex.Crim.App.1998) (Baird, J., dissenting) ("[A]ny non-constitutional error which adversely affects the substantial rights of the accused is reversible error.").

counsel's deficient performance. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

When the ineffective assistance of counsel claim relates to trial counsel's failing to object or the failure to make a valid objection, the defendant must show that the trial judge would have committed error in overruling an objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex.Crim.App.1996); *Brown v. State*, 6 S.W.3d 571, 575 (Tex. App.—Tyler 1999, pet ref'd); *Johnson v. State*, 987 S.W.2d 79, 90 (Tex.App.—Houston. [14th Dist.] 1998, pet. ref'd); *Williamson v. State*, 771 S.W.2d 601, 607 (Tex. App.—Dallas 1989, pet. ref'd). The third point of error contends trial counsel was ineffective for objecting on constitutional rather than statutory grounds to appellant's oral statement. Appellant argues that if an objection under article 38.22 section 3 of the Texas Code of Criminal Procedure had been lodged, either the objection would have been sustained and the statement not admitted into evidence, or the issue would have been preserved for appellate review. *Williamson v. State*, 771 S.W.2d at 607. In resolving this point of error, the majority utilizes an analytical framework that is flawed in two major respects. First, the majority fails to determine if appellant's oral statement was admissible. Second, the majority errs by converting the first prong of *Strickland* from an objective to a subjective inquiry.

## II.  Factual Summary

The admission of an oral statement allegedly made by appellant forms the basis of the issues before us. The complained of statement was admitted into evidence through the testimony of Houston police officer Frank Scoggins. On direct examination, Scoggins testified to receiving a tip from a confidential informant, which led to appellant's arrest and the subsequent search of her home. The search produced the contraband alleged in the indictment. On cross-examination, Scoggins testified that appellant's boyfriend, Romero Ramos, occupied the residence and had access to the area where the contraband was recovered. However, Scoggins did not charge Ramos with possession of the contraband because he denied knowledge of the drugs. During re-direct examination, the jury was removed and the following exchange occurred:

> THE STATE:  In response to the defendant's questioning of Officer Scoggins regarding the possibility that it may have been the boyfriend who was residing in the bedroom with the defendant or appeared to have been residing in the same bedroom with the defendant where the narcotics were found in the bathroom, the State intends to offer the following statement after [appellant] had been placed in custody and Mirandized by Officer Scoggins. The following is that Ramos admitted to Scoggins that he was a cocaine dealer but stated that he was currently out. However, [appellant] said that Ramos was her boyfriend and had nothing to do with the cocaine dealing.
>
> DEFENSE COUNSEL:  At which time we would object to it, Your Honor. In that the—that would be a violation of [appellant's] *Constitutional* right to remain silent.
>
> TRIAL COURT:  *Is that it?*  Okay. Well, *that objection's* overruled.[2]

Thereafter, Scoggins resumed his testimony in the presence of the jury and testified as follows:

> Q.  Now, Officer Scoggins, we were talking about why you didn't arrest [Ra-

---

2. All emphasis is supplied unless otherwise    indicated.

mos]. Did [appellant] ever say anything to you regarding that?

A. Yes, sir, she did.

Q. And was this when she was in custody?

A. Yes, sir.

Q. And was this after she had been Mirandized and warned of her Constitutional rights?

A. Yes, sir.

Q. And why didn't you arrest [Ramos]?

A. [Appellant] told me that [Ramos] didn't have anything to do—didn't know anything about the cocaine dealing.

Q. And did they make any other statements regarding the possibility of cocaine dealing?

A. Yes, sir.

Q. What was that?

A. She said that she was out.

Q. Did she say anything about her person—about her personal involvement?

A. She said that she was doing the dealing but she was out.

Q. Okay. As far as her being out did this turn out to be true?

A. That was not true.

In her case-in-chief, appellant called Ramos as a witness. He testified the contraband was his, and that he admitted possessing it to a plain clothes officer following the search of the residence. Ramos further testified appellant knew nothing of the contraband.

In his closing argument, the prosecutor referred to the oral statement appellant made to Scoggins. During deliberations, the jury requested and was read a portion of the re-cross examination of Scoggins where he testified that Ramos denied knowledge of the contraband.

## III. Failure to First Determine Whether Statement Was Admissible

Review of an ineffective assistance of counsel claim should begin with a determination of whether trial counsel's conduct was, in fact, deficient. For example, if a claim is made that counsel was ineffective for failing to request an instruction on a lesser included offense, the reviewing court must first determine whether the trial court would have erred in denying such a request. *Fuentes v. State*, 991 S.W.2d 267, 272–73 (Tex.Crim.App.1999); *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex.Crim.App.2000). *See also Young v. State*, 991 S.W.2d 835, 839 (Tex.Crim.App. 1999) (Court first determined whether defendant was entitled to jury instruction on necessity). In cases such as the one presented here where the defendant contends counsel was deficient in failing to prevent the admission of evidence, the threshold issue is whether the complained of evidence was admissible. *Ex parte Menchaca*, 854 S.W.2d 128, 130 (Tex.Crim.App.1993). If the reviewing court determines the evidence was admissible, the first prong of *Strickland* cannot be satisfied because counsel cannot be deficient for failing to take an action which had no legal basis. *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997), pet. dism'd, 991 S.W.2d 803 (Tex.Crim.App. 1998). Despite these clear pronouncements, the majority fails to determine if appellant's oral statement was admissible.[3] Consequently, I must now make that determination.

For more than twenty-five years, our law has been clear: the admission of an oral confession that otherwise complies

---

**3.** The majority implies the record is inadequate to evaluate counsel's performance. *Supra* at 731. But as can be seen in part II, *supra*, the record before us presents a com-

plete account of counsel's actions when the State sought to admit appellant's oral statement.

with the Fifth Amendment involves no federal constitutional infirmity. *Butler v. State*, 493 S.W.2d 190, 191 (Tex.Crim.App. 1973). "The prohibition against the use of oral confessions is a matter of a state statute." *Ibid.* Therefore, an objection on constitutional grounds is not valid. Accordingly, such an objection will neither prevent admission of the statement, nor preserve the issue for appellate review. *Vaughn*, 931 S.W.2d at 566; *Williamson*, 771 S.W.2d at 607.

Recognizing the lack of a constitutional prohibition, the Texas legislature enacted a statutory ban; article 38.22, section 3 of the Texas Code of Criminal Procedure forbids the admission of oral statements "made as a result of custodial interrogation."[4] In the instant case, the State argues the complained of statement was not made "in response to interrogation." In *Miranda v. Arizona*, the United States Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). *Accord, Newberry v. State*, 552 S.W.2d 457, 461 (Tex.Crim.App.1977). In *Rhode Island v. Innis*, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297, 306 (1980), the Supreme Court rejected the notion "that the *Miranda* rules were to apply only to those police interrogation practices that involve express questioning of a defendant while in custody." The Supreme Court held instead:

*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its

---

4. Article 38.22 Sec. 3 provides:

(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) all voices on the recording are identified; and

(5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

(b) Every electronic recording of any statement made by an accused during a custodial interrogation must be preserved until such time as the defendant's conviction for any offense relating thereto is final, all direct appeals therefrom are exhausted, or the prosecution of such offenses is barred by law.

(c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

(d) If the accused is a deaf person, the accused's statement under Section 2 or Section 3(a) of this article is not admissible against the accused unless the warning in Section 2 of this article is interpreted to the deaf person by an interpreter who is qualified and sworn as provided in Article 38.31 of this code.

(e) The courts of this state shall strictly construe Subsection (a) of this section and may not interpret Subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the state, except that:

(1) only voices that are material are identified; and

(2) the accused was given the warning in Subsection (a) of Section 2 above or its fully effective equivalent.

functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Id.* at 300–301, 100 S.Ct. at 1689–1690, 64 L.Ed.2d at 307, 308.

In the instant case, the complained of statement was made outside the residence after the search and discovery of the contraband. Scoggins was still conducting his investigation and making a determination as to whether Ramos should be charged with possession of the drugs. To make this determination Scoggins spoke to both appellant and Ramos. Scoggins questioned appellant in English. And, according to Scoggins, the oral statement was made in the form of an answer. Scoggins ultimately decided to not arrest Ramos for possession of the contraband because of appellant's oral statement. The State, in offering the oral statement, referred to it as an admission. Accordingly, appellant's oral statement was the result of custodial interrogation. Therefore, appellant's oral statement was not admissible. Consequently, had trial counsel objected on statutory rather than constitutional grounds the trial court would have erred in overruling the objection. *Vaughn,* 931 S.W.2d at 566; *Brown,* 6 S.W.3d at 575; *Johnson,* 987 S.W.2d at 90; *Williamson,* 771 S.W.2d at 607.

### IV. Improper Reliance on Presumption of Strategy

A determination that the evidence was *inadmissible* does not end the inquiry under the first prong of *Strickland.* Even if the record reveals a valid objection, motion or request was available to trial counsel, the failure to undertake the complained of

action may be attributable to sound trial strategy. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. For example, the failure to request an instruction on a lesser included offense to which the defendant was entitled, might have been the result of an all-or-nothing trial strategy. *Wood v. State,* 4 S.W.3d 85, 87–88 (Tex.App.—Fort Worth 1999, pet. ref'd). Because such a trial strategy, although risky, is sometimes successful, appellate courts rarely say the strategy was so unreasonable as to deny appellant the effective assistance of counsel. *Lynn v. State,* 860 S.W.2d 599, 603 (Tex.App.—Corpus Christi 1993, pet. ref'd). *See also Garcia v. State,* 887 S.W.2d 862, 881 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995) (trial counsel's decision not to request a limiting instruction to avoid reminding jury of incriminating evidence was reasonable trial strategy); *Beheler v. State,* 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, no pet.) (trial counsel's failure to request oral limiting instruction when extraneous offense evidence admitted could have been attributable to strategy); *Abbott v. State,* 726 S.W.2d 644, 649 (Tex.App.—Amarillo 1987, pet. ref'd) (trial counsel's failure to request limiting instruction on extraneous offenses could have been a strategic decision not to remind the jury of that evidence).

Generally, the appellate record is not sufficient to rebut *Strickland's* presumption that the challenged action of trial counsel was the result of "sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. In light of this presumption, a substantial risk of failure accompanies a claim of ineffective assistance of counsel on direct appeal because the record is simply underdeveloped and cannot adequately reflect the failings of trial counsel. *Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App.1999). When presented with such a record, appellate courts will

not indulge in speculation to find counsel's performance deficient. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

The majority embraces this general rule, and holds the merits of an ineffective assistance of counsel claim cannot be reached without the claim first being developed in the trial. Applying that holding to the instant case, the majority overrules the third point of error because the record does not show trial counsel's *subjective* intent for making a constitutional rather than a statutory objection to appellant's oral statement. But this general rule does not demand such slavish obedience. With every general rule there are exceptions. In this context, an exception to *Strickland's* presumption of strategy exists when the record clearly confirms that no reasonable trial counsel would have engaged in the complained of conduct or omission. *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim.App.1992); *Weeks v. State*, 894 S.W.2d 390, 392 (Tex.App.—Dallas 1994, no pet.); *Chavez v. State*, 6 S.W.3d 66, 71 (Tex.App.—San Antonio 1999, pet. ref'd). Holding counsel ineffective in light of such a record is not speculation because the deficient performance is confirmed by the appellate record. *Vasquez*, 830 S.W.2d at 951; *Weeks*, 894 S.W.2d at 392; *Stone v. State*, 17 S.W.3d 348, 350 (Tex.App.—Corpus Christi 2000, pet. ref'd).

In *Vasquez*, the Court of Criminal Appeals reviewed an ineffective assistance claim where counsel failed to request a jury instruction on the statutory defense of necessity. Even though the record was silent as to why no request was made the Court held counsel's performance was "clearly deficient." 830 S.W.2d at 951. In reaching its conclusion, the court said: "Although *Strickland* mandates that we should not second-guess trial strategy, we state without hesitation that the failure to seek an instruction on necessity would not have been acceptable trial strategy under

the facts of this case." 830 S.W.2d at 950 n. 3. The holding in *Vasquez* recognizes the first prong of *Strickland* is an *objective* inquiry focusing on whether counsel rendered reasonably competent assistance, and not on whether counsel may have had some *subjective* motivation for engaging in the complained of conduct. Therefore, even in the face of a record that is "silent" as to counsel's *subjective* trial strategy, the first prong of *Strickland* is satisfied if the record otherwise reflects that counsel's conduct was unacceptable regardless of any trial strategy. *Jones v. State*, 37 S.W.3d 552, 554 (Tex.App.—Beaumont 2001, no pet.).

More recently, in *Stone*, defense counsel introduced evidence of the defendant's prior murder conviction, evidence the State could *not* have introduced. The *Stone* Court recognized the presumption of trial strategy, but nevertheless examined the ineffective assistance of counsel claim in light of the available record and found the record was "adequate to show counsel's ineffectiveness." *Id.*, 17 S.W.3d at 350–52.

> The reason for developing a record here would be to ask Stone's attorney what his strategy was in offering the prior conviction evidence through the defendant when it could not come in otherwise. *We are convinced that nothing trial counsel could say would make this court believe that it was sound trial strategy to offer the prior conviction under the circumstances here. We are able to determine from the statement of facts from the trial and pre-trial proceedings that counsel rendered ineffective assistance of counsel. Thus we find the record sufficient in this case.*

*Ibid.* This conclusion was sustainable even though the record was silent as to defense counsel's *subjective* trial strategy, because "the record affirmatively demonstrate[d] that counsel took some action in defending

his client that no reasonably competent attorney could have believed constituted sound trial strategy." *Id.* at 353.

The majority's insistence on having the record contain trial counsel's subjective intent converts *Strickland* from an objective to a subjective inquiry. As we know from *Vasquez, Stone,* and any number of other cases, trial counsel's subjective intent is wholly irrelevant if the record clearly confirms that no reasonable trial counsel would have engaged in the complained of conduct or omission. Moreover, the majority's obeisance to the general rule that a "silent" record is insufficient to sustain an ineffective assistance of counsel claim is especially puzzling when one realizes the *Vasquez* exception has been specifically recognized by this court. *Campbell v. State,* 2 S.W.3d 729, 734 (Tex.App.—Houston [14th Dist.] 1999, pet. grt'd) ("[I]f a silent record clearly indicates no reasonable attorney could have made such trial decisions, to hold counsel ineffective is not speculation."), *rev'd on other grounds,* 49 S.W.3d 874 (Tex.Crim.App. 2001); *McCoy v. State,* 996 S.W.2d 896, 900 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd) (same). Finally, the majority's devotion to *Strickland's* presumption of strategy ignores the admonition from the Court of Criminal Appeals that we should not adopt an attitude that no successful claim of ineffective assistance of counsel may be raised on direct appeal. *Thompson,* 9 S.W.3d at

814 n. 6. By not employing the *Vasquez* exception, which is clearly applicable in the instant case, the majority abdicates its duty to examine the appellate record for an objective determination of whether reasonable trial counsel would have lodged an invalid constitutional objection to appellant's oral statement when a valid statutory objection was available.

The issue, therefore, under the proper analytical framework is whether an objective view of the record reflects that counsel's conduct of lodging an invalid objection and not lodging a valid objection constituted sound trial strategy. The record confirms appellant's only defensive theory was to establish others had equal or greater access to the contraband, thereby raising reasonable doubt as to whether she possessed it.[5] Further confirmation of this defensive theory comes from the colloquy in part II A, *supra,* where the State sought to admit the oral statement specifically to rebut appellant's defensive theory. Finally, by lodging an objection, we know trial counsel wanted to prevent admission of the oral statement. The record reveals counsel lodged an invalid objection, and failed to lodge a valid objection which would have either prevented admission of the oral statement or preserved the issue for appellate review. It is never sound, reasonable or plausible trial strategy to lodge an invalid objection when a valid objection is available.[6] As the Fifth Cir-

---

**5.** This defensive theory was pursued at voir dire where the venire was questioned via the use of a hypothetical question of whether a parent who lived in the same home as a child should be held responsible for items in the child's possession; in the cross-examination of Scoggins to establish other residents had equal or greater access to the contraband's location than appellant; by calling Romero who testified the contraband was his, and appellant's son, Arturo Perez, who also lived in the residence and testified that everyone in the home used the master bathroom in which the contraband was recovered because the second bathroom was under construction; and in closing argument.

**6.** As noted above, for more than twenty-five years our law has been clear that an objection on constitutional grounds is neither valid, nor proper to prevent the admission of an oral confession. *See* part II C, *supra.* Therefore, we are not presented with a situation where the ineffective assistance claim is based upon a proposition of law that was unsettled at the time of counsel's actions. *See Vaughn,* 931 S.W.2d at 567.

cuit held in *Lyons v. McCotter*, permitting the admission of prejudicial and inadmissible evidence has no strategic value. 770 F.2d 529, 534 (5th Cir.1985). Therefore, upon this record, appellant has established by a preponderance of evidence counsel's performance fell below the "*objective* standard of reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. Consequently, the majority errs in holding the first prong of *Strickland* has not been satisfied.

### V. Prejudice.

Under the second *Strickland* prong, appellant must demonstrate the deficient performance prejudiced the defense. Stated another way, the second prong is met if defense counsel's deficient performance undermines confidence in the proceedings.

The admission of the complained of statement wholly undermined appellant's defensive theory that she did not possess the contraband, but rather that it was possessed by Ramos or another who lived in the residence and had equal access to the master bathroom. The erroneous admission of the oral statement permeated the entire guilt phase of the trial. *Menchaca*, 854 S.W.2d at 133. Additionally, the oral statement effectively impeached the testimony of Ramos, appellant's strongest witness, who testified he possessed the contraband without the knowledge of appellant. The State utilized the statement in its closing argument to defeat appellant's defensive theory. *Menchaca*, 854 S.W.2d at 133; *Williamson*, 771 S.W.2d at 607. Finally, the fact that the jury was troubled with these inconsistent versions of possession is borne out by the fact that the jury asked to have a portion of the testimony read by the court reporter. Accordingly, I would find trial counsel's deficient performance prejudiced appellant's defense and hold, therefore, that the second prong of *Strickland* has been established.

For these reasons, I would sustain the third point of error. Because the majority does not, I respectfully dissent.