**Affirmed and Opinion filed February 26, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00610-CR

**JESSIE EARL NICHOLSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1488982**

## O P I N I O N

Appellant Jessie Earl Nicholson appeals his conviction for the murder of his wife Sheila Nicholson. Appellant asserts that the trial court abused its discretion by denying a challenge for cause to a venireperson and that appellant received ineffective assistance of counsel. We affirm.

### I. BACKGROUND

On the evening of November 16, 2015, appellant and his wife, the

complainant were seen arguing at a storage facility. Margarita Euceda saw a man, whom she later identified as appellant, leave the storage facility in a red car. The complainant remained at the facility.

Later that evening, Ken Collins and Jurneeia Richardson were sitting in the front seat of a car in the parking lot of a meat market when they heard what they thought was a firework. They turned around to look through the back window of the car but did not see anything. After that, Collins and Richardson heard what they recognized as a gunshot and a woman scream. They turned around again, and this time they saw the complainant collapse onto the ground. They next observed a man, whom both later identified as appellant, walk up to the complainant, stand over her, and shoot her three times.

After the shooting, appellant walked away from the complainant and put the gun to his head twice as if he were going to shoot himself but then put the gun down. Appellant got into a blue Ford Taurus automobile, which belonged to the complainant, and drove away. Collins and Richardson pulled out of their parking place and started to leave but stopped when they saw appellant drive to the parking lot of a fast food restaurant and park the Taurus. Appellant got out of the car and eventually walked back to the parking lot where the shooting had taken place. There, appellant got into a small red car, and drove away.

Collins, who was driving, followed appellant, while Richardson called 911. Richardson was able to give the license plate number of the car they were following to the 911 operator. Appellant eventually pulled over and parked on the street. At that point, Collins and Richardson decided to return to the meat market parking lot because they did not know if appellant knew he was being followed and they were concerned for their safety.

The complainant died from four gunshot wounds. The police arrested

appellant about two weeks later. The police found the gun, used to kill the complainant, on appellant, as well as a suicide note.

The jury found appellant guilty of murder and assessed his punishment at 75 years' incarceration.

Appellant timely brought this appeal challenging the trial court's denial of his request to strike a venireperson for cause and asserting that his trial counsel rendered ineffective assistance by failing to voice certain objections during the trial.

## II. ISSUES AND ANALYSIS

### A. Trial Court's Denial of Challenge to Venireperson

In his first issue, appellant asserts that the trial court abused its discretion because it denied a challenge for cause to venireperson 64, forcing appellant to use one of his peremptory strikes to remove that venireperson.

A prospective juror may be challenged for cause if the prospective juror has a bias or prejudice against the defendant or against the law upon which either the State or the defense is entitled to rely. Tex. Code Crim. Proc. Ann. art. 35.16(a)(9), (c)(2). The test is whether the prospective juror's bias or prejudice would substantially impair the individual's ability to carry out juror duties in accordance with the instructions and oath. *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016). To establish the propriety of the challenge for cause, the proponent of the challenge must show that the venireperson understood the requirements of the law and could not overcome the individual's prejudice well enough to follow the law. *Gonzales v. State*, 353 S.W.3d 826, 832 (Tex. Crim. App. 2011). Before a trial court may excuse a venireperson for cause on this ground, the court must explain the law to the venireperson, and inquire whether the venireperson can follow that law, regardless of the individual's personal views. *Id.*

When the trial court denies a valid challenge for cause, forcing a defendant to use a peremptory strike on a panel member who should have been removed, the defendant suffers harm if the defendant would have used that peremptory strike on another objectionable juror. *Comeaux v. State*, 445 S.W.3d 745, 750 (Tex. Crim. App. 2014). To preserve error on appeal, the defendant must (1) use all of the defendant's peremptory strikes, (2) ask for additional peremptory strikes and be denied them, (3) show that the defendant was forced to take an identified objectionable juror whom the defendant would not have accepted had the trial court granted the defendant's challenge for cause or granted the defendant additional strikes. *Degarmo v. State*, 922 S.W.2d 256, 263 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

We review the trial court's overruling of a challenge for cause, under an abuse-of-discretion standard. *Buntion*, 482 S.W.3d at 84. We examine the voir dire of the prospective juror as a whole to determine whether the record demonstrates that the prospective juror's convictions would interfere with the prospective juror's ability to serve as a juror and to abide by the oath. *Id.* In conducting this review, we afford great deference to the trial court's ruling "because the trial judge is present to observe the demeanor of prospective jurors and listen to tones of voice." *Id.* We give particular deference "when the prospective juror's answers are vacillating, unclear, or contradictory." *Id.*

Appellant argues that venireperson 64 could be challenged for cause on the basis of her (1) history as a domestic-violence victim; and (2) inability to stand against other jurors, despite the law. Appellant's counsel asked the members of the venire panel if any of them had been a victim of domestic violence. Venireperson 64 stated that she "was abused and had a gun pulled on [her]." She stated that she thought she could be fair, but she also stated that she did not know. Appellant's

4

counsel observed that she was "getting emotional just thinking about it right now."

Later, appellant's counsel asked if anyone on the venire panel felt unable to "stand up to 11 other people." Venireperson 64 stated that she is "just not that intelligent to understand and to sit there and remember all this stuff" and did not think she could "stand alone."

Appellant challenged venireperson 64 for cause based upon her experience as a domestic-violence victim, leading to the following exchange:

> THE COURT: Juror No. 64, if there is even the mention of domestic violence between the defendant and the complainant in this case, would you become so prejudiced that you could not evaluate the evidence objectively?
>
> VENIREPERSON: I think after I heard the evidence, no, I will.
>
> THE COURT: Sorry. Could you be —
>
> VENIREPERSON: No.
>
> THE COURT: Is the mere mention of domestic violence so prejudicial for you that you could no longer evaluate the evidence objectively?
>
> VENIREPERSON: No.
>
> THE COURT: No, that was such a bad question. You could or could not evaluate the evidence objectively?
>
> VENIREPERSON: Evaluate it objectively, which means —
>
> THE COURT: Can you — can you —
>
> VENIREPERSON: I don't know.
>
> THE COURT: If there is some mention of domestic violence, would you be overcome with bias and prejudice that you would be —
>
> VENIREPERSON: Find —
>
> THE COURT: — inclined to find the defendant guilty even if the State had failed to prove the case beyond a reasonable doubt?
>
> VENIREPERSON: I don't think so.
>
> THE COURT: No?

VENIREPERSON:  No.

THE COURT:  Okay.  So, you feel like —

VENIREPERSON:  I'm —

THE COURT:  — you could evaluate the evidence and put it in context and be a fair juror?

VENIREPERSON: I think once I hear evidence, I want to say I can; but —

THE COURT:  Okay.  Well, only you know.

VENIREPERSON:  I mean, I know.  I just — I don't know how it's going to go, you know.  I'm scared.

THE COURT:  Well —

VENIREPERSON:  I don't want to do nothing — you know, send him and he is innocent or anything because of my feelings.  I want to say I can be objective.  Is that the word?

THE COURT:  Sure.

VENIREPERSON:  Did I say it right?

THE COURT:  Even though you hear about domestic violence, you can put the case in context; and you're not going to automatically vote guilty just because there is some indication of domestic violence at the time or in the past?

VENIREPERSON:  No.  No.

THE COURT:  All right.  Okay.  Thank you. So, it sounds like you can be — still be fair.

MR. VILLARREAL:  I have a question.

THE COURT:  Is that true?

VENIREPERSON:  Yes.

THE COURT:  Okay.  Mr. Villarreal?

                    *      *      *

MR. VILLARREAL:  . . . If you heard evidence of domestic violence, would that cause you to not be fair just the fact that domestic violence was involved because of your personal experience?

THE COURT:  And what was your answer?

6

VENIREPERSON:  No.

MR. VILLARREAL:  Would you be able to set your personal experience aside —

VENIREPERSON:  That's the question.

MR. VILLARREAL:  — and just decide the case based upon what you heard?

THE COURT:  Can I add something to that since you're having trouble answering?

VENIREPERSON:  Yes.

THE COURT:  You know, we're all a product of our environment.  So, we're not saying you can't think about what happened; and I don't know if it was you who was the victim or someone else who was the victim.  So, we're not saying you have to put it out of your mind; but, obviously, the person on trial here is not the person who committed domestic violence, that's so concerning to you.

VENIREPERSON:  Exactly.

THE COURT:  So ask your question again.

VENIREPERSON:  Put my feelings — can I put my feelings aside?  Yes.  I think so, yes.

THE COURT:  Okay.

VENIREPERSON:  I'm going to say yes.

The trial court found venireperson 64 qualified to serve.  Appellant's counsel then asked venireperson 64 if she would be able to stand alone against the other eleven jurors.

VENIREPERSON:  If I think he is innocent and everybody else is saying no, would I be able to —

MR. VILLARREAL:  Stand in your judgment?

VENIREPERSON:  I'm not very good at standing on my own.  I'm just being honest with you, you know.  I'm not —

MR. VILLARREAL:  So, you're afraid you would not be able to give us the benefit of your individual judgment?

7

VENIREPERSON:  Yes.

THE COURT:  Sorry.  What did you say?

VENIREPERSON:  Yes. I mean —

THE COURT:  I —

VENIREPERSON:  I can't do it, just stand alone.  I'm not strong like that.

THE COURT:  You remember where with the rat stands alone at the end? What was that game — that song?  You remember that, she and I —

MR. VILLARREAL:  I remember that.

THE COURT:  Remember it?

VENIREPERSON:  But me against 11 other people, I just couldn't do it.

THE COURT:  Okay. Well, of course, you're allowed to deliberate and talk.  That is the reason there are deliberations.  But if your conscience told you to vote one way or the other and you really felt that that was the way to vote, would you continue to vote that way?

VENIREPERSON:  I would hope I would, but I can't really say.

THE COURT:  Is that —

VENIREPERSON:  I'm scared when it comes to standing alone.  Okay?

THE COURT:  Okay.

VENIREPERSON:  Just — I mean, I know —

THE COURT:  Well, if you're on the jury, it's not one vote of guilty.  It's 12 votes of guilty.  And we just want to make sure you won't change your vote just because somebody else tries to get you to do that.  Will you promise me you will vote your conscience?

VENIREPERSON:  Yes.

The trial court stated that it thought venireperson 64 was "trying really hard to follow the law."

Appellant's counsel then stated that when he was talking to the venire panel as a whole, he noticed that venireperson 64's "eyes seemed to water when we were

8

talking about the issue of domestic violence" and asked her "[w]hat was going through your head when you heard that?"

VENIREPERSON: Me standing on the front porch and having a gun pointed at me.

MR. VILLARREAL: Having a gun pointed at you?

VENIREPERSON: Uh-huh (affirmative.)

THE COURT: Okay.

VENIREPERSON: You know.

MR. VILLARREAL: It brought back all those memories?

VENIREPERSON: Oh, yeah.

MR. VILLARREAL: You being a victim?

VENIREPERSON: Many years. And I can't believe it's bothering me. You know, I thought I was over it.

MR. VILLARREAL: You're still not over it?

VENIREPERSON: Maybe.

MR. VILLARREAL: Okay. And this is a case involving the use of a deadly weapon, where a woman may or may not be a victim. That's not hitting close to home to you?

VENIREPERSON: Well, it is.

THE COURT: Okay. Let me tell you, you are such a nice person. Sorry to have to keep talking to you, but it seems to me you have been very forthcoming. So, the lawyers know what they have to work with you here and how you feel about these issues. I also think that you're very committed to following the law and to being fair. I mean, that's what I'm getting from your answers. Is that — am I reading you correctly?

VENIREPERSON: I'm a Godly person, and I want to do what's right.

THE COURT: Okay. I can see that.

VENIREPERSON: It hurts. It don't hurt, just —

THE COURT: Okay.

VENIREPERSON: You know.

9

THE COURT: I just — so we can have a clear answer here, can you judge this case on facts, not based on something that happened to you?

VENIREPERSON: I —

THE COURT: I mean —

VENIREPERSON: Saying yeah because, you know, I am a Christian; and I believe in, you know —

THE COURT: The law.

VENIREPERSON: — the law and stuff and —

THE COURT: Okay.

VENIREPERSON: — the test — let me tell you, it's a test.

THE COURT: I guess you have had a happy life in recent years?

VENIREPERSON: Oh, yeah. So glad. Been married 30 years.

THE COURT: To somebody else?

VENIREPERSON: Yes, of course.

THE COURT: So, that's a blessing. So sometimes you have a lot of knowledge about the world and human relationships; and that's very helpful when you're on the jury, as long as you can be fair. And I want you to promise me that if you're the only juror who feels one way, whatever way it is, that you will continue to vote your conscience.

Can you promise me you will do that?

VENIREPERSON: Yeah.

In finding that venireperson 64 was qualified, the trial judge noted that she had "watched her very carefully; but she is really one of those really nice people who is really committed to doing the right thing . . . [and] is just committed to being a fair juror." The trial court denied appellant's counsel's request for an additional peremptory strike.

Appellant identified an objectionable juror against whom he would have used a peremptory strike had the trial court granted him an additional peremptory strike. Therefore, appellant preserved error by using all of his peremptory strikes, asked for

10

and was refused an additional peremptory strike, and was forced to take an identified juror whom appellant found objectionable and would not have accepted had the trial court granted his challenge for cause or granted him an additional peremptory strike. *See Degarmo*, 922 S.W.2d at 263.

A review of the entire voir dire record of venireperson 64 reflects she ultimately stated that she could put her feelings regarding her experience with domestic violence aside, be fair, and "vote [her] conscience" even if the other 11 jurors voted differently. Even though venireperson 64 may have vacillated at certain points during her voir dire, in these circumstances, we defer to the trial court's ruling because the trial court was in the best position to evaluate her responses and to observe her demeanor. *See Buntion*, 482 S.W.3d at 84. We conclude that the trial court did not abuse its discretion by deciding that venireperson 64 could abide by the oath and denying appellant's request for an additional peremptory strike. *See id.*

Appellant further complains that the trial court impermissibly attempted to rehabilitate venireperson 64. *See Post v. State*, 936 S.W.2d 343, 347 (Tex. App.—Fort Worth 1996, pet. ref'd), *overruled on other grounds*, *Shot with Two Arrows v. State*, 64 S.W.3d 606 (Tex. App.—Fort Worth 2001, no pet.) ("It is not the court's function to rehabilitate venirepersons. It is the court's function to judge the qualifications of the potential jurors, not to qualify the jurors."). But, the law permits trial courts to intervene in voir dire examinations "for purposes of clarification and expedition." *Gardner v. State*, 733 S.W.2d 195, 210 (Tex. Crim. App. 1987). Reversible error occurs only when the trial court's comments are reasonably calculated to benefit the State or prejudice the defendant's rights. *Id.*

"Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial." *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). Appellant did not object at trial to the trial court's questioning of venireperson 64.

Therefore, appellant has waived error, if any, to the trial court's purported attempts to rehabilitate venireperson 64. *See Thomas v. State*, 470 S.W.3d 577, 593 (Tex. App.—Houston [1st Dist.] 2015), *aff'd*, 505 S.W.3d 916 (Tex. Crim. App. 2016) (holding that the appellant waived any complaints regarding the trial court's statements made during voir dire); *Woodall v. State*, 350 S.W.3d 691, 695 (Tex. App.—Amarillo 2011, no pet.) (holding that the appellant waived error regarding the trial court's personal questioning of prospective jurors who asserted that they would not be able to consider the full range of punishment). Without addressing the merits of this argument, we overrule appellant's first issue.

## B.      Ineffective-Assistance-of-Counsel Claims

In his second and third issues, appellant claims he received ineffective assistance of counsel because his attorney did not object to the State's (1) misstatement of law in voir dire; or (2) improper jury argument during closing argument.

### 1.      Standard of Review

Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.051 (Supp.). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prevail on his ineffective-assistance-of-counsel claims, appellant must prove (1) counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability that but for counsel's deficiency the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88; *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to ineffective-assistance

12

claims under the Texas Constitution). In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, any allegation of ineffectiveness must be firmly grounded in the record so that the record affirmatively shows the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017).

Trial counsel generally should be given an opportunity to explain counsel's actions before the court finds counsel ineffective. *Id.* In most cases, direct appeal proves an inadequate vehicle for raising an ineffective-assistance claim because the record generally is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. In the face of a silent record, we cannot know trial counsel's strategy, so we will not find deficient performance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

A sound trial strategy may be executed imperfectly, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Instead, we "review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Though counsel's conscious decision not to object to evidence is not insulated from review, unless a defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel generally will not be found ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012).

## 2.    Voir Dire

In his second issue, appellant asserts that his trial counsel rendered ineffective assistance because he did not object to the State's purported misstatement of the law. During voir dire, the State told the jury:

> Okay.  He has the right, just like I do, to subpoena witnesses.  If they don't — they don't have to call witnesses; but if they choose to, they have a right to subpoena them.  Open record policy.  You see sometimes on these TV shows, you know, the State will call this witness and the Defense, I object, Your Honor. I didn't know about this witness.

> We don't do that here.  He is entitled to see everything in my file. He knows what's coming.  I literally turn over my file and say, Whatever you want to look at, go ahead and look at it.

> He knows what evidence I'm bringing.  He knows what witnesses I plan to call.  Nothing will be a surprise here.  Okay?  So, no hiding the magic ball from the Defense.  I have got to show him everything.  I'm obligated to show him everything, especially evidence that would be exculpatory.  Okay?  He has the right to raise a defense, but he doesn't have to tell me what that defense is.

> Now, sometimes in cases the prosecution will have an idea what the Defense may bring up; but sometimes they don't.  And I could be finding out what his defense is if they chose to present one, at the same time the jury would.  Everybody understand that I'm not obligated to know what his defense is?

Appellant contends that the State left the jury with the false impression that he received everything in the State's case file under its "open file" policy.  Article 39.14(a) governs discovery in criminal law matters and does not require the State to produce items that are work-product.  Tex. Code Crim. Proc. Ann. art 39.14(a) (Supp.).  Because appellant did not have access to the State's work product, appellant asserts that the State misrepresented what appellant was entitled to receive from the State under the law.

14

Appellant's counsel did not object to the complained-of portion of the State's comments to the venire panel, and the record does not reveal counsel's rationale for not objecting to those comments. Appellant did not file a motion for new trial, which would have provided the trial court with an opportunity to hold a hearing on counsel's performance and develop a record for appeal. Without an affidavit from counsel or a hearing on appellant's ineffective-assistance complaint, there is nothing in the record to inform this court of trial counsel's strategy on this issue. *See Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court.").

In the face of a silent record, we cannot determine that trial counsel provided ineffective assistance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. We cannot conclude that no competent attorney would have acted as appellant's counsel did because there may have been strategic reasons for not objecting to the State's comments during voir dire. Appellant's counsel could have determined that the State's comments were not a misstatement of the law because the prosecutor's work product is not discoverable and there would have been no reason to inform the members of the venire panel that appellant was not entitled to discover the prosecutor's work product. *See* Tex. Code Crim. Proc. art. 39.14(a).

Appellant has not met his burden to rebut the presumption that counsel's actions were motivated by sound trial strategy by presenting evidence that counsel did not object when appellant claims that counsel should have. *See Perez v. State*, 56 S.W.3d 727, 731 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (explaining that the appellant has the burden to rebut presumption of sound trial strategy with evidence). We overrule appellant's second issue.

15

### 3. Jury Argument

In his third issue, appellant maintains that he received ineffective assistance of counsel when his attorney did not object to improper jury argument during closing in the guilt-innocence phase of the trial. Proper jury argument generally falls within one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

The State made the following comment: "This is the day that that family sitting right over there deserves." Appellant contends that this comment does not fall within one of the proper areas of jury argument. According to appellant, the State effectively, and improperly, told the jury that the complainant's family expects or demands a particular verdict. *See Harris v. State*, 56 S.W.3d 52, 56 (Tex. App.— Houston [14th Dist.] 2001, pet. ref'd) (stating that it is impermissible to tell the jury that the community expects or demands a particular verdict or form of punishment).

The State immediately followed the complained-of comment with a plea for law enforcement:

> It is a day when law enforcement and civilians who came forward and did the right thing all hoped would come and today when the 12 of you will come together and you will do real justice.

The record stands silent as to trial counsel's reasons for not objecting to the statement appellant now challenges on appeal. As noted above, because appellant did not file a motion for new trial, the trial court did not have the opportunity to hold a hearing and develop a record on the reasons trial counsel did not object to the statement. In the absence of a record disclosing trial counsel's reasons for not objecting to the State's argument, we cannot find that counsel provided ineffective

16

assistance unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. The conduct under review does not meet that demanding standard.

The decision to object to particular statements made during closing argument is a matter of trial strategy. *Evans v. State*, 60 S.W.3d 269, 273 (Tex. App.—Amarillo 2001, pet. ref'd). Appellant's counsel may have decided that objecting to that single statement would only bring attention to and emphasize the purported error. *See Kuhn v. State*, 393 S.W.3d 519, 539 (Tex. App.—Austin 2013, pet. ref'd) ("One such reasonably sound strategic motivation could have been the desire to avoid drawing addition attention to the prosecutor's opinion."). Appellant has not rebutted the presumption that trial counsel's conduct was motivated by sound trial strategy. *See Perez*, 56 S.W.3d at 731. We overrule appellant's third issue.

Having overruled appellant's issues, we affirm the trial court's judgment.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Spain and Poissant.
Publish — Tex. R. App. P. 47.2(b).

17