Affirmed and Memorandum Opinion filed July 31, 2003











Affirmed and Memorandum Opinion filed July 31, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-01010-CR

____________

 

DEXTER
MCCLELLAND, Appellant

 

V.

 

THE
STATE OF TEXAS, Appellee

 



 

On Appeal from the
230th District Court

Harris County, Texas

Trial Court Cause
No.  870,228

 



 

M E M O R A N D U M    O P I N I O N

A jury convicted Dexter
McClelland of murder and assessed punishment at forty years= confinement in the
Institutional Division-Texas Department of Criminal Justice.  Appellant contends the trial court erred for
two reasons: (1) the state failed to carry its burden of persuasion that
appellant was not entitled to an acquittal on the grounds of self-defense; and
(2) trial counsel rendered ineffective assistance of counsel in violation of
both the U.S. and Texas Constitutions because trial counsel failed to argue for
manslaughter  at the conclusion of the
punishment phase.  Finding no error, we
affirm.








Background
Facts

About 8:00 at night on February
24, 2001 appellant was at the Third Ward Car Care socializing with
acquaintances.  Anauflee >Pop= Jackson, the deceased
complainant, drove up in his car, shouted at appellant, parked, and, with his
car still running, got out, approached appellant, and started arguing with
him.  According to witnesses, Jackson did
not have a weapon.  There was a heated
exchange of profanities between the two men, possibly some pushing back and
forth, and Jackson slapped appellant in the face more than once.  Appellant left the group, went to his
vehicle, a Ford Explorer, and pulled a handgun out of the backseat.  Everyone started to move away from the area,
except Jackson.  There is some conflict
in the testimony at this point.  Virginia
Berry, Mary Bowman, and Christopher Cruse said that Jackson started to run away
and appellant shot him while he was running away.  Mrs. Bowman testified that she saw appellant
chasing Jackson around the Explorer; Jackson was holding his chest and trying
to get back to his car when she saw appellant shoot him.  She testified appellant continued to chase
Jackson across the street and to shoot at him. 
However, Arthur Williams, a friend of appellant, testified that
appellant was not chasing Jackson and the shots went off very fast, “in the
blink of an eye.”  The distance between
appellant and Jackson at the time of the gun shots was estimated to be between
five and nine feet.  After the shooting,
appellant drove off in his car.

A police officer, E. W.
Walker, who was in the neighborhood responding to a theft call, arrived on the
scene after being flagged down by a woman. 
She told him a man was lying in the middle of the street with his head
shot off.  He found Jackson, who appeared
to be dead, with his face covered in blood lying in the street.  Todd Taylor, from the Houston Police
Department, homicide division, arrived on the scene also.  He found four shell casings all fired from
the same weapon, but uncovered no weapons at the scene.  Specifically, no weapon was found on Jackson
or in Jackson=s
car.  Taylor prepared a photo-spread
after interviewing witnesses.  Three
eye-witnesses to the shooting identified appellant from the photo-spread.








The deceased complainant
was older and shorter than appellant.  Jackson
was about five-feet four-inches tall and weighed 198 pounds.  The appellant was approximately six-feet
one-inch tall and weighed 160 pounds at the time of the shooting.   

The medical examiner
testified that Jackson had three gunshot wounds: all were listed as the cause
of his death.  One bullet entered Jackson
from the front of the left shoulder, and remained lodged in the back of his
upper right arm.  Another gunshot entered
at the lower back and exited the upper right abdomen.  A third gunshot entered the back of the upper
left arm, passed across the top of his chest, traveled through his left lung,
perforated his upper aorta and superior vena cava and exited the left arm.  In other words, two of the three bullets
entered Jackson from behind.  

The medical examiner also
testified that Jackson=s
blood test showed that he had been abusing marijuana and PCP within hours
before his death.  A defense expert
testified that people high on PCP could behave in a belligerent, violent,
bizarre and unpredictable manner.  The defense
also put on evidence that Jackson had threatened appellant earlier that day and
antagonized him on prior occasions.  

The
State carried its burden.








In his first issue,
appellant claims the State failed to carry its burden of persuasion that
appellant was not entitled to an acquittal on the grounds of self-defense.  “[A] person is justified in using force
against another when and to the degree he reasonably believes the force is
immediately necessary to protect himself against the other=s use or attempted use of
unlawful force.”  Tex. Pen. Code Ann. '
9.31 (a) (Vernon 2003).  The State has
the burden of persuasion in disproving evidence of self‑defense; however,
this is not a burden of production, requiring the State to affirmatively produce
evidence refuting the self‑defense claim. 
Instead, it is a burden requiring the State to prove defendant=s guilt beyond a
reasonable doubt.  Saxton v. State,
804 S.W.2d 910, 913B14
(Tex. Crim. App. 1991). Generally, self‑defense is considered an issue of
fact to be determined by the fact finder. 
See Saxton, 804 S.W.2d at 913B14.  The fact finder, therefore, remains free to
accept or reject any defensive evidence on the issue.  See 
id. at 914.  A jury=s verdict of guilty is an
implicit finding rejecting the defendant=s
self-defense theory.  Id. (citing Jenkins
v.  State, 740 S.W.2d 435, 438 (Tex.
Crim. App.  1983)).  

Appellant argues the
legal sufficiency of the evidence of a guilt finding of murder in his brief;
however, his brief concludes that “[t]he evidence established adequate grounds
for an acquittal on the theory of self-defense and it was against the great
weight and preponderance of the evidence for the jury to have found
otherwise.”  As a result, we will examine
the jury=s rejection of the
self-defense argument, and whether the State met its burden to prove the
elements of murder beyond a reasonable doubt, both legally and factually.  See Tex.  R. 
App.  P.  38.9.

Legal sufficiency 

When a defendant
challenges the legal sufficiency of the rejection of a defense under Tex. Pen. Code Ann. ' 9.31, we look to
whether, after viewing all the evidence in the light most favorable to the
prosecution, any rational trier of fact would have found the essential elements
of murder beyond a reasonable doubt and also would have found against appellant
on the self-defense issue beyond a reasonable doubt.  Saxton, 804 S.W.2d at 914.








In this case, the
evidence viewed in the light most favorable to the verdict supports the guilty
verdict for murder.  Appellant retrieved
a handgun from his vehicle and shot at Jackson, not once, but four times.  He chased after Jackson while shooting.  Jackson never had a weapon in his hands.  Two of the three gun-shots entered Jackson
from behind, reinforcing the eye-witness testimony that he was running away
from appellantCwho
then fled the scene.  Any rational trier
of fact could have found the shots were not fired in self-defense.  This evidence, when viewed in the light most
favorable to the verdict, is sufficient for a rational trier of fact to
disbelieve appellant=s
self‑defense argument and to find beyond a reasonable doubt that
appellant committed murder.  See
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d
560 (1979); Saxton, 804 S.W.2d at 914. 


Factual sufficiency

When a defendant
challenges the factual sufficiency of the rejection of a defense, the reviewing
court reviews all of the evidence in a neutral light and asks whether the proof
of guilt is so obviously weak as to undermine confidence in the jury=s determination or so
greatly outweighed by contrary proof as to indicate that a manifest injustice
has occurred.  See  Zuliani v. State, 97 S.W.3d 589, 593B95 (Tex. Crim. App.
2003); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  In conducting our review, we are mindful that
the jury is the exclusive judge of the credibility of witnesses and the weight
to be given their testimony.  Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  We must defer to the jury=s determination
concerning the weight given contradictory evidence.  See Johnson, 23 S.W.3d at 8; Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Santellan v. State,
939 S.W.2d 155, 164B65
(Tex. Crim. App. 1997). 
Our authority to disagree with the jury=s determination is
appropriate only when the record clearly indicates such action is necessary to
avoid a manifest injustice. Otherwise, due deference must be accorded the jury=s determinations,
particularly those concerning the weight and credibility of the evidence.  Johnson, 23 S.W.3d at
9.  

In our review, we must
consider the most important evidence that the appellant claims undermines the
jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  Threats of
physical harm were made by Jackson to appellant earlier that day and on
previous occasions.  Jackson provoked the
argument the night he was killed and witnesses testified  ‘he was looking for a fight.’  On all those previous occasions, however, appellant
left the scene.  On the night of February
24, 2001, appellant was able to extricate himself from Jackson and the group to
be able to go to his vehicle.  But this
time he did not retreat.  Instead, he
retrieved a gun and shot Jackson three times.  This evidence is sufficient to support the
jury=s rejection of appellant=s affirmative defense of
self-defense.








Moreover, when the
evidence is viewed in a neutral light, we hold the guilty verdict is not
against the great weight and preponderance of the evidence as to be clearly
wrong and unjust.  See Zuliani, 97 S.W.3d at
595; Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  The testimony of Ms. Bowman, Mr. Cruse, Mrs.
Berry, and Mr. Brazen supports the jury=s
verdict of murder, and rejection of the self-defense claim.  The jury chose not to believe the defense
witnesses who testified otherwise.  See
Santellan v. State, 939 S.W.2d at 164; Tucker v. State, 15 S.W.3d
229, 235B36 (Tex. App.CHouston [14th Dist.]
2000, pet ref=d);
Vasquez v. State, 2 S.W.3d 355, 358B59
(Tex. App.CSan
Antonio 1999,  pet. ref=d).

In conclusion, the State=s proof of appellant=s guilt is not so
obviously weak that it undermines confidence in the jury=s verdict; neither is the
State=s proof greatly outweighed
by contrary proof.  See Zuliani,
97 S.W.3d at 593B94.  Viewing all of the evidence in a neutral
light, we hold the evidence to be factually sufficient.  

Accordingly, we overrule
appellant=s
first issue.

Effective
assistance of counsel.








Appellant avers in his
second and third points of error that trial counsel was ineffective in
violation of the Sixth Amendment to the U.S. Constitution and Article I, ' 10 of the Texas
Constitution, because they failed to argue for an instruction on sudden passion
at the punishment stage.[1]  Both the United States and Texas
Constitutions guarantee an accused the right to effective assistance of
counsel.  U.S. Const. Amend. Vi; Tex. Const. Art. I, ' 10; see also Tex. Code Crim. Proc. Ann. art. 1.05
(Vernon 1977).  Appellant must prove the
ineffectiveness of trial counsel by a preponderance of the evidence.  See Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim.
App. 1999).  In doing this, appellant
must overcome the strong presumption that counsel=s
conduct is within the wide range of professional assistance.  Strickland v. Washington, 466 U.S.
668, 688B89, 104 S. Ct. 2052, 80
L. Ed.2d 674 (1984);  Thompson, 9
S.W.3d at 813.  A claim of ineffective
assistance of counsel must be firmly founded and affirmatively demonstrated in
the record.  Thompson, 9 S.W.3d at
813B14.  The record is best developed by a collateral
attack, such as a motion for new trial.  Jackson
v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); Kemp v.
State, 892 S.W.2d 112, 115 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d).

A claim that counsel=s assistance was so
defective as to require a reversal has two components.  First, appellant must show his counsel=s performance was
deficient;  second, he must show the
deficient performance prejudiced the defense. 
See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.[2]
 

The first component is met by showing appellant=s trial counsel made errors so
significant that they were not functioning as the “counsel” guaranteed by the
Sixth Amendment to the United States Constitution.  Id. 
Appellant must show his attorneys= representation fell below an
objective standard of reasonableness. 
Id. at 687B88, 104 S. Ct. at 2064. 
The issue is whether counsel=s assistance was reasonable under all
the circumstances and prevailing professional norms at the time of the alleged
error.  Id. at 688B89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have
rendered adequate assistance and made all significant decisions in the exercise
of reasonable professional judgment.”  Id.
at 690, 104 S. Ct. at 2066.








The second prong of Strickland requires a showing that
counsel=s errors were so serious that they deprived
the defendant of a fair trial, i.e., a trial whose result is reliable.  Id. at 687, 104 S. Ct. at 2064.  A defendant must show there is a reasonable
probability that, but for counsel=s unprofessional errors, the result
of the proceeding would have been different. 
Id. at 694, 104 S. Ct. at 2068. 
A reasonable probability is a probability sufficient to undermine
confidence in the outcome.  Id.; Hernandez
v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  The ultimate focus of our inquiry must be on
the fundamental fairness of the proceeding whose result is being
challenged.  Id. at 695, 104 S.
Ct. at 2069.  However, our scrutiny of
counsel=s performance must be highly
deferential, and every effort must be made to eliminate the distorting effects
of hindsight.  Id. at 689, 104 S.
Ct. at 2065.

This case presents an example of the inadequacies inherent in
evaluating ineffective assistance claims on direct appeal.  Appellant did not file a motion for new trial
that raised this issue; therefore, the appellate complaint directed at trial
counsel involves action that may or may not be grounded in sound trial
strategy.  The record does not reflect
defense counsels= reasons for failing to argue or submit consideration of
either manslaughter or >sudden passion= at the punishment phase.  In such situations, ineffectiveness of
counsel issues are better presented within the framework of a post‑conviction
writ of habeas corpus under  article
11.07 of the Code of Criminal Procedure. 
See Tex. Code Crim. Proc.
Ann. art. 11.07 (Vernon Supp. 2003); Bone, 77 S.W.3d at 833B34; Ex parte Torres, 943
S.W.2d 469, 475B76 (Tex. Crim. App. 1997).  









Ineffective assistance of counsel claims are not built on
retrospective speculation;  they must “be
firmly founded in the record.”  That
record must itself affirmatively demonstrate the alleged ineffectiveness.  Bone, 77 S.W.3d at 835; Thompson,
9 S.W.3d at 813B14.  For us to evaluate
why trial counsel did not argue for a manslaughter conviction or request a
sudden passion instruction in the punishment stage of the trial without a more
adequate record would be speculative and we refuse to do so.  See Thompson, 9 S.W.3d at 813B14. 
The Court of Criminal Appeals has repeatedly cautioned appellate courts
to “be especially hesitant to declare counsel ineffective based upon a single
alleged miscalculation during what amounts to otherwise satisfactory
representation, especially when the record provides no discernible explanation
of the motivation behind counsel=s actions.”  Id. 
at 814; see Bone, 77 S.W.3d at 833; Perez v. State, 56
S.W.3d 727, 736 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (giving examples of when the
failure to undertake the complained of action may be attributable to sound
trial strategy).  In the present case,
appellant has failed to meet the first prong of Strickland because the
record has not been adequately developed for this Court to consider whether
defense counsels= representation was ineffective.  However, appellant is not precluded from bringing
a petition for writ of habeas corpus to fully develop the record.  See Thompson, 9 S.W.3d at 814B15. 
Therefore, under the facts of this case as developed on appeal, we
overrule appellant=s second and third issues.

Accordingly, we affirm the judgment.

 

/s/        Wanda McKee Fowler

Justice

 

 

Judgment rendered and Memorandum
Opinion filed July 31, 2003.

Panel consists of Justices Yates,
Anderson, and Fowler.

Do Not PublishCTex.
R. App. P. 47.2(b).











[1]  Appellant complains
that trial counsel did not ask for a manslaughter instruction at the punishment
phase, citing to section 19.02 of the Penal Code.  Counsel asked for a manslaughter instruction
at the guilt phase.  Because a
manslaughter request is properly made at the guilt phase (see
section 19.04 of the Penal Code) and not at the punishment phase, and appellant
complains about the punishment phase, we interpret his point of error to
complain that trial counsel did not request an instruction on >sudden passion= at the
punishment phase.





[2]   The standards
set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80
L. Ed.2d 674 (1984) apply to claims of ineffective assistance of counsel
whether at the guilt/innocence phase or the punishment phase of trial.  See Hernandez v. State, 988 S.W.2d 770
(Tex. Crim. App. 1999).