Mario CHAVEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00913–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 4, 1999.

Discretionary Review Refused
Jan. 19, 2000.

Richard E. Langlois, Law Offices of Richard E. Langlois, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: TOM RICKHOFF, Justice, SARAH DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### NATURE OF THE CASE

Mario Chavez was convicted by jury of murder and sentenced to 30 years' imprisonment. Chavez appeals his conviction contending the trial court erred by prohibiting cross examination of Ruben Cuellar during the punishment phase regarding the issue of sudden passion and adequate cause; the evidence was factually insufficient to support his conviction, and; he was denied effective assistance of counsel. We affirm his conviction.

### FACTS AND PROCEDURAL BACKGROUND

Mario Chavez attended a New Year's Eve party on the night of December 31, 1994. Several of Chavez' friends, including his brother, Richard Chavez, attended the party, which continued well into the early morning hours. The deceased, Richard Cortez, and his friends arrived sometime between 3 a.m. and 4 a.m. Shortly after the group's arrival, a fight ensued between the male members of the two groups. The record contains conflicting testimony as to what happened during the fight. Cortez died as a result of the inju-

ries he received during the melee. Chavez was convicted of murder, and now appeals.

### DISCUSSION

■ In his first point of error, Chavez contends the trial court erred during the punishment phase by denying him the opportunity to cross examine Ruben Cuellar on the issue of sudden passion and adequate cause. Chavez contends that the exclusion of such evidence caused egregious harm.

Ruben Cuellar did not testify during the guilt/innocence phase of trial. During the punishment phase, the State called Cuellar to testify to Chavez' conduct at a pretrial hearing. Cuellar testified only that at a pretrial hearing, Mario and Richard Chavez blew a kiss in his direction, where he was seated with Cortez' parents. On cross examination, Chavez' attorney attempted to question Cuellar regarding the incident on January 1, 1995, in which Cortez was murdered. The State objected to such examination, and the trial court sustained the objection, limiting cross examination to matters testified to during direct examination of the punishment phase. Although Chavez' attorney objected to the court's ruling excluding the testimony, he did not make an offer of proof or a formal or informal bill of exception. Trial counsel merely asserted that evidence of sudden passion was relevant to the punishment phase pursuant to Section 19.02 of the Texas Penal Code, which allows presentation of such evidence by the defendant for mitigation purposes.[1]

■ When an appellant contends that his examination of a witness has been unduly limited, nothing is preserved for review unless the record shows what questions he wanted to propound and the answers he expected therefrom. *Toler v. State*, 546 S.W.2d 290, 295 (Tex.Crim. App.1977). Because Chavez failed to make an offer of proof or bill of exception, no error is presented for review. Chavez' first point of error is overruled.

■ In his second point of error, Chavez contends the evidence is factually insufficient to support his conviction. Chavez contends the evidence showed only that he stomped Cortez' head after Cortez had been stabbed, and Cortez died from multiple stab wounds.

In reviewing a challenge to the factual sufficiency of the evidence, we must view all the evidence equally, without regard to whether the evidence is favorable to the State or the appellant. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). While we review the fact finder's weighing of the evidence and are authorized to disagree with the fact finder's determination, we must be appropriately deferential to such determination to avoid substituting our judgment for that of the jury. *Id.* at 133–135. Accordingly, it is not enough that we believe a different result is more reasonable. *Id.* Following such a review, we will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 135. Because this court may not "find" facts or substitute our judgment for that of the fact finder, we must return the case to trial before a different jury if we find the verdict to be contrary to the overwhelming weight of the evidence to be clearly wrong and unjust. *Id.* at 135.

■ Under the "law of parties," a person may be liable as a party to a crime if the state shows that he acted with the intent to assist or promote the offense, and solicited, encouraged, directed, aided, or attempted to aid another person committing the crime. TEX. PENAL CODE ANN.

---

1. "At the punishment stage of trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." TEX. PENAL CODE ANN. § 19.02(d) (Vernon's 1994).

§ 7.02(a)(2)(Vernon 1994). Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App.1985); *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex.Crim.App.1978). The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose. *Brooks v. State*, 580 S.W.2d 825, 831 (Tex.Crim.App.1979). In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to commit the offense. *Beier v. State*, 687 S.W.2d 2, 4 (Tex.Crim.App.1985); *Medellin v. State*, 617 S.W.2d 229, 231 (Tex.Crim.App.1981).

Two witnesses testified that Chavez assisted in Cortez' murder. Richard Chassaigne, a friend of Cortez, testified that Chavez held Cortez from behind while Richard Chavez stabbed him. Michelle White testified that Chavez fought with Cortez when the melee began and that Chavez had a knife in his hand. White did not see Chavez stab Cortez. White testified that after Cortez dropped to the ground, Chavez kicked him numerous times while Richard Chavez stabbed him.

Rebecca Pena testified that she only saw Chavez kick Cortez after he was on the ground and had been stabbed. Jackie Arevalos testified that Chavez was pushed on top of her on the couch, and remained there while Richard Chavez stabbed Cortez. Arevalos testified that Chavez stomped Cortez in the head after he was stabbed. Monica Perez testified that she did not see Chavez hold Cortez while he was being stabbed, and she saw Richard Chavez and Mandy Mendoza stab Cortez. Jennifer Martinez testified that she could not tell the difference between Mario and Richard Chavez because they look alike. However, she testified she was sure she saw Mario Chavez holding a knife during the fight, but did not see him stab Cortez. Martinez testified that Chavez was not on the couch while Cortez was being stabbed.

This testimony presents diverse and conflicting eyewitness accounts of the fight resulting in Cortez' death. However, it does suggest that, even if Chavez only beat Cortez, his actions encouraged and assisted those who stabbed Cortez, effecting Cortez' death. Based on Chassaigne and White's testimony, a rational trier of fact could have concluded that Chavez caused Cortez' death by acting in concert with those who stabbed Cortez and, thus, he encouraged and assisted Cortez' murder. After reviewing Chassaigne's and White's testimony, and weighing it against the remaining eyewitness testimony, we must conclude that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. This court must defer to the jury's resolution of the conflict presented by the evidence. *See Cain v. State*, 958 S.W.2d 404, 407–09 (Tex.Crim.App.1997). Chavez' second point of error is overruled.

In his third point of error, Chavez contends he was denied effective assistance of counsel based on several deficient acts.

■ To show ineffective assistance of counsel, a convicted defendant must (1) show that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) show that the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strick-*

*land,* 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The prejudice prong of *Strickland* analysis must focus on whether the result of the proceeding was fundamentally unfair or unreliable, rather than solely on mere outcome determination. *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

Under the *Strickland* test, the defendant bears the burden of proving ineffective assistance and, on review, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment and sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Green v. State,* 899 S.W.2d 245, 248 (Tex.App.—San Antonio 1995, no pet.); *Weeks v. State,* 894 S.W.2d 390, 391 (Tex.App.-Dallas 1994, no pet.). The appellant can rebut this presumption by showing his attorney's performance was unreasonable under prevailing professional norms, and the challenged action was not sound trial strategy. *Green,* 899 S.W.2d at 248; *Weeks,* 894 S.W.2d at 391. Whether the *Strickland* standard has been met is to be judged by the "totality of the representation" rather than by isolated acts or omissions of the trial counsel, and the test is applied at the time of the trial, not through hindsight. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Banks v. State,* 819 S.W.2d 676, 681 (Tex.App.—San Antonio 1991, pet. ref'd). However, when trial counsel's errors are so fundamental that they cannot be rationally excused as "trial strategy," ineffective assistance of counsel exists. *Green,* 899 S.W.2d at 248.

A record on direct appeal rarely suffices to rebut the strong presumption of sound trial strategy. Consequently, "as a general rule, one should not raise an issue of ineffective assistance of counsel on direct appeal." *Jackson,* 877 S.W.2d at 772 (Maloney, J., concurring). Because an appellate court reviews a trial court record with an eye toward errors allegedly committed in relation to issues of guilt and innocence or punishment, a record related to issues of counsel's performance of counsel is best developed in the context of a hearing on application for writ of habeas corpus or motion for new trial. *Id.* at 772–73. When the appellate record contains no evidence of the reasoning behind a trial counsel's action, the reviewing court cannot conclude that counsel's performance was deficient, because such determination would be based upon speculation. *Weeks,* 894 S.W.2d at 391. However, when a "silent record" clearly confirms that no reasonable trial counsel could have made such trial decisions, to hold counsel ineffective is not speculation, and this court may review the alleged error. *Id.* at 392; *Vasquez v. State,* 830 S.W.2d 948, 950–51 (Tex.Crim. App.1992)(per curiam).

Chavez filed a motion for new trial; however, no hearing was held. Therefore, the record is silent regarding trial counsel's strategy and reasoning. However, this court will review Chavez' contentions to determine whether the record clearly confirms that no reasonable trial counsel could have made such trial decisions. *See Weeks,* 894 S.W.2d at 392; *Vasquez,* 830 S.W.2d at 950–51.

*Failure to file motion to sever*

Chavez contends his trial counsel was ineffective by failing to file a motion to sever his trial from that of his codefendant, Richard Chavez. Chavez contends that the parties' presented "antagonistic" and "mutually exclusive" defenses and, therefore, counsel rendered ineffective assistance by failing to move for severance.

When two defendants are indicted for the same offense, they should be tried jointly, as a general rule. *See* Tex. Code Crim. P. Ann. art. 36.09 (Vernon 1981). However, the trial court may order separate trials, at its discretion. *Id.* As an exception to this general rule, if a joint trial would prejudice either defendant,

upon proper motion to sever, the trial court must sever the trials of those involved. *Id.* If the trial court was required to grant a motion to sever, and if counsel failed to ask for it, the appellant would be able to show that his trial counsel was ineffective. *Haggerty v. State*, 825 S.W.2d 545, 547 (Tex.App.-Houston [1st Dist.] 1992, no pet.). Similarly, if the trial court would have abused its discretion by failing to grant a motion to sever, the appellant would be able to show that his trial counsel was ineffective by failing to move for severance. *Id.*

Chavez asserts that he was prejudiced by the joint trial due to "antagonistic" defenses presented by himself and Richard Chavez. Chavez presented the defensive theory that he did not commit or assist in Cortez' murder. Richard Chavez presented the defensive theory that he did not commit the offense, or in the alternative, he acted in self defense. Chavez' defensive theory was not prejudiced by Richard Chavez' defensive theories. Therefore, severance would not have been mandatory under TEX.CODE CRIM. P. ANN. art. 36.09. Because severance would have been discretionary, and because the nature of this case falls within the general rule that defendants indicted for the same offense should be tried jointly, the record does not clearly confirm that reasonable trial counsel would have moved for severance. Chavez' first contention is overruled.

*Failure to request jury charge on issue of independent impulse*

▆▆▆ Chavez contends his trial counsel was ineffective by failing to request a jury charge on "independent impulse" at the guilt/innocence phase of trial. Chavez contends that such charge would have been mandatory had counsel objected to its omission, and any error was waived by counsel's failure to object.

▆▆▆ The basis for an instruction on independent impulse is evidence that an accused, though he was admittedly intent on some wrongful conduct, nevertheless did not contemplate the extent of criminal conduct actually engaged in by his fellows, and thus cannot be held vicariously responsible for their conduct. *Mayfield v. State*, 716 S.W.2d 509, 513 (Tex.Crim.App. 1986). A jury instruction on independent impulse is not required when the defendant asserts that "he never agreed to commit any offense at all...." *Id.* In addition, an instruction tracking Section 7.02(a)(2) of the Penal Code is sufficient to present the issue of independent impulse to the jury. *Davis v. State*, 651 S.W.2d 787, 792 (Tex.Crim.App.1983).

The jury instruction in this case tracked Section 7.02(a)(2) of the Penal Code. Accordingly, a requested instruction on independent impulse would have been futile and should have been properly denied by the trial court. *See id.* Therefore, the record does not clearly confirm that trial counsel should have requested such instruction. Chavez' second contention is overruled.

*Failure to request jury charge on issue of sudden passion*

▆▆▆ Because evidence presented during the guilt/innocence phase of trial was sufficient to raise the issue of sudden passion, Chavez contends his trial counsel was ineffective by failing to request a jury charge on sudden passion at the punishment phase of trial. Chavez contends trial counsel's failure to request the charge on sudden passion caused harm because the jury could have imposed a lighter sentence if it found he acted under sudden passion.[2]

When the defendant raises issues of self-defense during the guilt/innocence phase of trial, the issue of sudden passion is typically also raised. *See Benavides v. State*, 992 S.W.2d 511, 524–25 (Tex.App.-

**2.** The *Strickland* standard utilized to determine whether the accused was afforded effective assistance of counsel during the guilt/innocence phase of trial is also utilized to make this determination regarding counsel's performance during the punishment phase. *See Hernandez v. State*, 988 S.W.2d 770, 771–73 (Tex.Crim.App.1999)(en banc).

Houston [1st Dist.] 1999, n.w.h.). Accordingly, trial courts should give both instructions when requested. *Id.* However, the adverse is also true: "[i]f, except in 'a rare instance,' the same evidence raising a fact issue on self-defense also raises an issue on 'sudden passion,' then it must also be true that, except in rare instances, when the State's evidence is sufficient to overcome a claim of self-defense, it will also be sufficient to show the absence of sudden passion." *Id.* at 525.

Because it is reasonable to presume that the evidence justifying the jury's finding against Chavez on self-defense would also justify a finding that Chavez was not acting under sudden passion, the record does not clearly confirm that trial counsel should have requested such instruction. Accordingly, Chavez' third contention is overruled.

*Conflict of interest*

█ Chavez contends his trial counsel was ineffective by creating a conflict of interest through his abrasive and unprofessional conduct. Chavez contends his trial counsel was antagonistic toward witnesses, other defense counsel, and the court, which caused animosity and evidenced a conflict of interest between his own and counsel's interests. By advancing personal interests, Chavez contends trial counsel adversely affected his interest in receiving a fair trial.

█ To meet the *Strickland* standard under a conflict of interest contention, the appellant must show that defense counsel "actively represented conflicting interests"

and "an actual conflict of interest adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052; *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Prejudice is presumed if the appellant meets this showing. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052; *Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708.

Chavez' argument must fail. Although his trial counsel may have been antagonistic and unprofessional, such behavior does not create a conflict of interest between a client and attorney. While Chavez may have disapproved of his trial counsel's behavior, methods of cross examination, and other aspects of his trial tactics, such behavior does not necessitate a finding that counsel acted in a manner inconsistent with Chavez' interests. To meet the *Cuyler* burden, Chavez must show that an existent conflict of interest adversely affected his trial counsel's performance. *See Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708. Chavez contends the opposite; that his counsel's unprofessional performance created a conflict of interest. Chavez has failed to make the required showing, therefore, his fourth contention is overruled.

Chavez' third point of error is overruled.