# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00761-CV

**Steven Roger Berthiaume, Appellant**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

### FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT NO. 8114, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found that appellant Steven Roger Berthiaume's parental rights to his children T.M.B. and R.J.B. should be terminated,[1] and the trial court signed an order to that effect. Berthiaume appeals, contending the evidence is insufficient to support a finding that termination is in the children's best interest. We affirm the trial court's order.

### Factual Summary

In August 2002, appellee the Texas Department of Protective and Regulatory Services received a report that T.M.B. and R.J.B. were being neglected. Brandi Roundtree, a Department caseworker, testified that she talked to Sylvia Nieto, Berthiaume's girlfriend, who said she was

---

[1] At the time of trial in December 2003, T.M.B. was nine years old and R.J.B. was eight.

watching the children while Berthiaume was in jail. Roundtree found that the children were living in an abandoned building without electricity or water, that T.M.B. was wetting her pants, that the children's clothes were dirty, that the family was homeless, and that Berthiaume had been laid off from his job. On August 19, Roundtree interviewed Berthiaume in jail, where he explained that he had violated his probation and left the children with Nieto until he was released. On August 27, Roundtree learned that Nieto had left the children with another woman who said she could keep the children for a while. The children were taken into Department custody in September.

Dan Bertram, a Department caseworker, testified that when T.M.B. was taken into Department custody, she was having trouble with bed-wetting and defecating in her bed. Since then, her condition had improved, but she was depressed and still had some trouble with bed-wetting. T.M.B. takes medications for ADHD and to help with her depression and bed-wetting. R.J.B. suffers from fetal alcohol syndrome, is taking some remedial classes, and is on medication for ADHD. Bertram said the children were doing well in therapeutic foster care, but that the stress of the holidays and the trial had impacted their behavior negatively. Bertram testified that T.M.B. and R.J.B.'s relationship had normalized since they have been in foster care. When they were first removed from Berthiaume's care, they clung to each other, but they have since started to behave like normal brothers and sisters, fighting occasionally and separating somewhat. Bertram said it was in the children's best interest to be adopted together, which was the Department's goal. Bertram said T.M.B. wants to remain with her father, but he believes that if Berthiaume's parental rights are terminated, T.M.B. would be open to adoption. He said that she "has expressed that she would not mind being adopted, as long as, she could have some sort of contact with her father."

2

Bertram said Berthiaume had been arrested at least seven times since 1992, including arrests for theft by check and theft. Berthiaume had four or five offenses of driving under the influence or while intoxicated and was also arrested for public intoxication. His probation was revoked because he did not pay his probation fees, did not attend substance abuse counseling, and did not report to his probation officer, and he was sentenced to sixteen months in state jail. Bertram further testified that Berthiaume completed a parenting class, an anger management class, and a drug and alcohol assessment, but refused to attend the Alcoholics Anonymous meetings that the psychologist recommended and the Department required. Berthiaume attended six counseling sessions, but after he missed several sessions, counseling was canceled. Bertram said Berthiaume had missed nine of twenty-two scheduled visits with his children, sometimes simply failing to appear. According to Bertram, Berthiaume's doctor said Berthiaume refuses to accept his probable alcoholism or attend AA meetings and gave only a "guarded" prognosis for improvement. Bertram said that until Berthiaume's arrest, the Department felt there was a chance of reuniting the family. Even at that time, however, the Department was moving toward termination because of Berthiaume's alcohol abuse and failure to meet his therapist's recommendations. Berthiaume's brother said that he would be willing to adopt the children but not foster them because he did not want to be involved with Berthiaume, and one of Berthiaume's sisters expressed similar concerns.

Donna Ross, the children's counselor, testified she was helping T.M.B. learn "how to be a kid again," after being placed in a parenting role for so long. T.M.B. misses her father and is scared about the life-changing decisions being made in the termination proceeding. Ross said that if T.M.B. is placed into a stable home, she will probably not need therapy for very long and that

3

R.J.B. would adapt to an adoptive placement if he were placed with T.M.B. Ross was concerned that if T.M.B. returned to Berthiaume's care she would be forced back into a caretaker role.

Francis Kerby, the children's guardian ad litem, testified that T.M.B. loves her father very much and that R.J.B. is a loving child, but will not talk about his past. If Kerby asks about school or toys, R.J.B. will interact, but if she asks about his past, he will not look at her and acts like she never asked the question. Kerby feared that Berthiaume would not be able to provide necessities for the children and that they would again be forced to grow up too fast. Being in foster care, the children have been able to act like children again, and Kerby believes it is in the children's best interest for Berthiaume's parental rights to be terminated.

Angela Burleson, the children's foster mother, testified that when the children first arrived, they were very quiet and withdrawn and kept to themselves and that T.M.B. acted as a parent for R.J.B. By the time of trial, they were interactive and verbal and had made significant progress on personal hygiene, table manners, use of utensils, interaction with other children, and school work. Burleson had spoken to the children about foster care and the possibility of adoption and was not sure R.J.B. understood the concepts, but believed T.M.B. would accept adoption if it were ordered.

Berthiaume testified that he was able to provide housing for the children until August 2002, when he injured himself and lost his job. After that, he and the children stayed with friends and relatives for a while. Berthiaume denied that he and the children were living in a building without water and electricity and said that in August 2002, they were living at a friend's house or at Nieto's mother's house. Berthiaume said that Nieto drinks and that if she does not stop drinking when he is released, he will not continue their relationship. Berthiaume testified that he had sought

4

to have his probation revoked so he could finish his jail time because the Department was holding his probation against him. Berthiaume said that he had not had a drink in a year and a half and did not need to attend AA meetings, but has started voluntarily attending AA meetings while in jail.

Berthiaume said that although he obviously could not care for the children while in jail, he was sure his mother, sister, or brother would. When reminded that his brother will not agree to be a custodian for the children but will only adopt them, Berthiaume said that he was sure he could persuade his brother otherwise. Asked what he planned to do once he was released, he said he was taking a computer class in jail to try to get a better job once he is released and has a job waiting for him at a Days Inn. He intends to live with his mother or his sister and then rent a house, but said it would probably be more than a year before he was released from jail and got a job and a house. He testified that he was never going to go back to jail again.

Berthiaume's mother testified that she did not want to have Berthiaume's rights to the children terminated. She testified that she could not afford to care for them in the meantime. She believed it would be best for them to stay with him once he was released from prison. Pressed to state what she believed was in the children's best interest, not in Berthiaume's best interest, she said that they needed "to get into a steady home where [they're] going to be all the time." She thought Berthiaume could provide such a home once he was released from jail.

**Standard of Review**

A person's parental rights may be terminated only if the Department proves and the trial court finds by clear and convincing evidence (1) that the parent has engaged in conduct set out as statutory grounds for termination, and (2) that termination is in the child's best interest. Tex. Fam.

5

Code Ann. § 161.001 (West 2002); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations" supporting termination. *C.H.*, 89 S.W.3d at 23 (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)). In reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the finding and determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We review the factual sufficiency of the evidence by viewing all of the evidence and determining whether a reasonable fact-finder could have resolved disputed evidence in favor of its finding. *Id.* If the disputed evidence is such that a reasonable fact-finder could have formed a firm belief as to the truth of the State's allegations, the evidence is factually sufficient. *Id.*; *C.H.*, 89 S.W.3d at 25. We must maintain appropriate deference to the fact-finder's role by assuming that it resolved evidentiary conflicts in favor of its finding when reasonable to do so and by disregarding evidence that it could have disbelieved. *J.F.C.*, 96 S.W.3d at 266-67.

Some of the factors to be considered in determining a child's best interests are: the child's wishes; the child's emotional and physical needs now and in the future; emotional or physical danger to the child now and in the future; the parenting abilities of the parties seeking custody; programs available to help those parties; plans for the child by the parties seeking custody; the stability of the proposed placement; the parent's conduct indicating that the parent-child relationship is improper; and any excuses for the parent's conduct. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). Permanence is of paramount importance in considering a child's present and future needs. *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied); *In re M.A.N.M.*, 75

6

S.W.3d 73, 77 (Tex. App.—San Antonio 2002, no pet.); *Salas v. Texas Dep't of Protective & Regulatory Servs.*, 71 S.W.3d 783, 792 (Tex. App.—El Paso 2002, no pet.); *see Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 513 (1982) (children need stable, long-term relationships with caretakers). A fact-finder may compare the parent's and the Department's plans for a child and may consider the possible consequences of a decision not to terminate. *D.O. v. Texas Dep't of Human Servs.*, 851 S.W.2d 351, 358 (Tex. App.—Austin 1993, no writ).

**Analysis**

Berthiaume has had repeated trouble with the law and alcohol-related problems. Although he testified that he had not had a drink in more than a year and that he was never going to get sent back to jail, the fact-finder could reasonably have concluded otherwise. During the time that the children were involved with the Department, Berthiaume was evaluated by doctors and told to attend AA meetings, but refused to do so, saying he did not have a drinking problem. Not until he was in jail did he begin attending AA meetings. Through a combination of unfortunate events, Berthiaume and the children found themselves to be homeless for a time, and during this time Berthiaume's probation was revoked, leaving the children with Nieto, who also has a drinking problem. Berthiaume plans to get a job immediately upon his release and believes that he can get a house arranged shortly after his release. However, his stated plans were somewhat vague as to how he would be able to afford housing, utilities, and necessities for the children when he had trouble providing such items before being sent to jail. When the children were taken into Department care, T.M.B. was having problems with urinating and defecating on herself, but her condition has improved since being placed in therapeutic foster care. Both children have improved in areas like

7

manners, hygiene, and social interaction, and several witnesses testified that T.M.B. is learning to be a child again, rather than feeling like she has to be a parent to her brother. The children are in need of a stable environment, but at the time of trial Berthiaume was not scheduled to be released from prison for another year. His mother could not afford to care for the children, a sister could not care for them because she was going to school, and his brother told the Department that he would only take the children if he could adopt them. Although Berthiaume testified that once released, his behavior would be different and he would be able to support the children, the jury was not obligated to believe him and was entitled to look to his past behavior in making its determination. Department witnesses, including the children's guardian ad litem, testified that they believed it was in the children's best interest for Berthiaume's rights to be terminated and for the children to be adopted together. In spite of the fact that the children love their father, based on this record, we cannot hold that the evidence is legally or factually insufficient to support the jury's finding that termination was in the children's best interest. We overrule Berthiaume's issue on appeal and affirm the trial court's order of termination.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 31, 2004