

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00167-CR

_____

MICHAEL LERON DOWDEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th Judicial District Court
Cass County, Texas
Trial Court No. 2010-F-00079

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

After having been charged with and convicted of delivery of one gram or more but less than four grams of a controlled substance (oxycodone), a second-degree felony with the punishment enhanced to a first-degree felony range due to prior felony convictions, Michael Leron Dowden was sentenced to sixty-five years' imprisonment.[1]

On appeal, Dowden complains that: (1) the evidence is legally insufficient to support his conviction;[2] (2) the trial court erred by excluding evidence of a witness' (Johnny Broach's) prior felony convictions; and (3) the court erred in not allowing Dowden to explore mental health issues from which Broach is alleged to have suffered.

We affirm the trial court's judgment because: (1) the evidence is sufficient to support the judgment; (2) Dowden failed to preserve his argument regarding Broach's prior felony convictions; and (3) Dowden's argument regarding Broach's mental afflictions is moot.

---

[1]Dowden was also charged with and convicted of the state-jail felony of delivery of a controlled substance (hydrocodone) of a quantity of less than twenty-eight grams and sentenced to two years' confinement for that offense, the sentence to run concurrently with the offense the subject of this appeal. This second offense is the subject of our opinion in our cause number 06-11-00168-CR, issued simultaneously with this opinion.

[2]Dowden also argues that there is factually insufficient evidence to support the verdict. With Judge Cochran joining the lead opinion, authoring a concurring opinion, and Judge Womack concurring with the lead opinion and joining the concurrence, in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (4–1–4 decision), a plurality of the Texas Court of Criminal Appeals abolished the factual sufficiency review established by *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny. The plurality and Judge Womack agreed that the *Jackson v. Virginia*, 443 U.S. 307 (1979), legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894–95, 912–13. Since the Texas Court of Criminal Appeals has abolished factual sufficiency review, we will review only Dowden's challenge to the legal sufficiency of the evidence.

**Factual Background**

According to the evidence presented by the State, Sergeant Richard Greer[3] of the Texas Department of Public Safety (DPS) had been investigating reports that Dowden had been trafficking in prescription narcotics. On January 26, 2009, Police Officer Richard Mixon of the Queen City Police Department introduced Greer to Broach with the idea that Broach could assist Greer in the investigation.[4] Broach agreed to participate in a sting operation whereby he would purchase narcotics from Dowden.

On February 10, 2009, Greer first conducted a full search of Broach and his vehicle, ensuring that Broach did not possess any contraband. After taking all of Broach's personal cash, Greer gave Broach $400.00 and instructed Broach to go to Dowden's residence, purchase fifteen oxycodone tablets and twenty-five hydrocodone tablets, and immediately return to meet with Greer. Greer also rigged Broach up with concealed audio and video recording devices. A police video recording showing Broach arriving at Dowden's residence was also admitted into evidence and published to the jury.

Broach testified that he met with Dowden in the kitchen of Dowden's residence (which Broach testified was located in Cass County, Texas) and told him that he wanted to purchase fifteen oxycodone and twenty-five hydrocodone tablets. Dowden removed pill bottles out of his

---

[3]Greer is now a lieutenant with the DPS.

[4]Broach testified that he had known Dowden for six months to a year prior to his meeting with Greer. He agreed to take part in Greer's investigation of Dowden because Broach's ex-fiancé, Jessie Jane Lunsford, was charged with writing fraudulent prescriptions, and Broach wished to obtain some leniency for her.

kitchen cabinet and counted out the tablets Broach had requested. Broach testified that Dowden did not hand the tablets directly to him, but "left them on the counter." Dowden told Broach he had some sandwich bags inside the cabinet, and Broach retrieved one of the bags and put the pills inside. Broach put the bag containing the pills in his pocket, paid Dowden $200.00, and after a brief conversation about a possible future purchase, Broach left the residence and returned to meet with Greer.

At the meeting, Greer searched Broach once again, retrieving the pills and the recording equipment. Based upon the investigation and Broach's recorded transaction with Dowden, Dowden was arrested and charged with delivery of the narcotics mentioned above.

## Legal Sufficiency

In his first point of error, Dowden contends that the evidence is legally insufficient to support his conviction.[5] Specifically, Dowden submits that a rational trier of fact could not have found that he delivered controlled substances to Broach on February 10, 2009, in Queen City, Texas.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 912 (citing

---

[5]Dowden's first point of error generally contends that the evidence supporting his conviction is insufficient, but in his second point of error, he specifically argues that the evidence identifying him as the perpetrator is insufficient and/or inconclusive. Because identity is an element of the offense of delivery of a controlled substance, we review the two points of error together rather than separately.

4

*Jackson*, 443 U.S. at 319); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The elements of the offense of delivery of a Penalty Group 3 or 4 controlled substance are: (1) a person (2) knowingly[6] (3) delivers (4) a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.114(a) (West 2010). An actor may effectuate delivery of contraband by actual transfer, constructive transfer, or by an offer to sell. TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (West 2010). The indictment alleged that on or about February 10, 2009, Dowden

---

[6]Dowden does not challenge the "knowingly" element, and, therefore, we do not address it.

did then and there intentionally or knowingly deliver by actual transfer to Johnny Broach, a controlled substance, to wit: **Oxycodone**, in an amount by aggregate weight, including any adulterants or dilutants, **one (1) gram or more but less than four (4) grams**.

A reiteration of the facts previously stated is not required here.

Prior to the sale to which Broach testified, Greer had shown Broach a driver's license photograph of Dowden and Broach positively identified the man in the photograph as Dowden. Greer testified that he was confident that the person depicted in the photograph provided to Broach, and the person seen in the video recording of the sting operation[7] conducting the transaction with Broach was Dowden. Further, Greer and Broach both identified Dowden in the courtroom as the person shown in the video recording, and the person from whom Broach had purchased the drugs.

"Deliver" is defined in the Texas Controlled Substances Act as "to transfer, actually or constructively, to another a controlled substance, . . . regardless of whether there is an agency relationship." TEX. HEALTH & SAFETY CODE ANN. § 481.002(8). When discussing actual delivery, the Texas Court of Criminal Appeals held that "[f]or some purposes, a delivery is accomplished by nothing more than making a thing available to another, placing it within his reach, notwithstanding there is no actual handing of the thing from one person to another." *Nevarez v. State*, 767 S.W.2d 766, 768 (Tex. Crim. App. 1989).

---

[7]The video recording from Broach's hidden equipment of the alleged transaction was admitted into evidence as State's Exhibit Number 4 and was published to the jury.

Here, although the drugs were not physically delivered directly from the hand of Dowden to the hand of Broach, there was sufficient delivery of the narcotics when Dowden placed them on the counter for Broach to retrieve.

Chance Kline, a DPS forensic scientist employed with the Tyler Regional Crime Laboratory, testified that substances that Broach allegedly purchased from Dowden were 2.97 grams of oxycodone and 16.18 grams of hydrocodone.

Viewing this evidence in the light most favorable to the jury's verdict, we find there is sufficient evidence from which a rational trier of fact could find on or about February 10, 2009, in Cass County, Texas, Dowden actually delivered controlled substances to Broach. Accordingly, we overrule Dowden's first point of error.

**Restrictions on Impeachment Questions Directed to Broach**

As a part of his second point of error, Dowden argues that the trial court erred in excluding evidence of Broach's prior felony convictions and mental afflictions.[8]

On appeal, the trial court's rulings admitting or excluding evidence are subject to review for an abuse of discretion. *Matson v. State*, 819 S.W.2d 839, 850 (Tex. Crim. App. 1991). If the trial court's decision was within the bounds of reasonable disagreement, we will not disturb its ruling. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

---

[8]In a conclusory sentence, Dowden contends that these alleged errors are fundamental errors. However, we decline to address this aspect of his argument because Dowden fails to explain how this is fundamental error or into which fundamental category these errors belong.

During Dowden's cross-examination of Broach, the following exchange took place regarding Broach's prior criminal history:

> Q    [By Defense Counsel]   Were you convicted of burglary of a building in Bowie County on December 11, 1997?
>
> A    [By Broach]   I plead the Fifth [Amendment] to that too.
>
> [By Defense Counsel]:   Your Honor, we would object to that as not being an appropriate response.
>
> THE COURT:   What's the state's position?
>
> [By State]:   Your Honor, there -- the court's aware there are charges pending against this defendant and to acknowledge any prior criminal history could -- if in fact it does exist -- could influence or impact the outcome of any proceeding that he may have on charges now pending against him.
>
> THE COURT:   I'll sustain the objection -- I'm sorry.   I'll overrule the objection.   I'll sustain his Fifth Amendment privilege.

To preserve an issue for appellate review, a party must make a timely request, motion, or objection, state the specific grounds thereof, and obtain a ruling. *Wal-Mart Stores*, *Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999) (citing TEX. R. APP. P. 33.1(a)).   The specific grounds of an objection must be stated if it is not apparent from the context in which the objection is raised.   TEX. R. EVID. 103(a); *Morales v. State*, 951 S.W.2d 59, 62 (Tex. App.—Corpus Christi 1997, no pet.).   An appellant's trial objection must be timely and specific, and it must comport with his objection on appeal, or error is waived.   TEX. R. APP. P. 33.1(a)(1)(A); *Gallo v. State*, 239 S.W.3d 757 (Tex. Crim. App. 2007).   At trial, Dowden objected to Broach's invocation of his

8

Fifth Amendment rights on the grounds that it was not "an appropriate response." On appeal, Dowden contends that the "evidence related to the prior felony history . . . contributed to" Dowden's conviction and such evidence "would have impacted the mind of the average juror." Not having advanced this argument to the trial court, it was waived and not preserved for our review. Accordingly, we overrule this point of error.

Dowden also contends that the trial court erred by excluding evidence regarding Broach's mental afflictions. During Dowden's cross-examination of Broach, the following exchange took place regarding Broach's alleged mental afflictions:

> Q     [By Defense Counsel]    Have you had any mental afflictions during your life?
>
> A     [By Broach]    No, sir.
>
> Q     Have you ever attempted to commit suicide?
>
> A     Yes, sir, I have.
>
> Q     When was that?
>
> A     Back when I was a young kid.
>
> Q     How many times did you attempt to commit suicide?
>
> A     Just one time.
>
> Q     How old were you?
>
> [By the State]:    Your Honor, I'm going to object to the line of questioning. I do not believe that that goes to the credibility of this witness, his

mental health issues from when he was a juvenile which probably extend beyond a ten year period of time.

THE COURT:   What's the defense's position?

[By Defense Counsel]:   Your Honor, it does -- we think that his mental afflictions do affect his credibility or could possibly affect his credibility, and it's certainly a decision that the jury should weigh.   And I don't think he said he was a juvenile yet.

THE COURT:   Well, I'm going to sustain the state's objection. I've sustained the state's objection.

Insofar as Dowden's point of error as it relates to Broach's suicide attempt, we overrule it as moot because the trial court did not exclude such evidence.   The suicide-related testimony was before the jury for all purposes, and the trial court neither struck it, nor instructed the jury to disregard it.   Insofar as Dowden's point of error relates to other mental afflictions, nothing was preserved for our review.   To adequately preserve error and demonstrate harm, Dowden needed to make a bill of exception or other offer of proof in order to demonstrate or make a showing of what evidence or testimony the trial court was excluding.   *See* TEX. R. EVID. 103(a)(2); *see Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999) (finding error in exclusion of evidence may not be urged on appeal unless proponent perfects offer of proof or bill of exception); *Chavez v. State*, 6 S.W.3d 66, 69 (Tex. App.—San Antonio 1999, pet. ref'd).   In this case, Dowden failed to make an offer of proof regarding any other mental afflictions suffered by Broach (if any).   Accordingly, insofar as his point of error relates to other mental afflictions, Dowden failed to preserve this contention for our review.

10

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:    May 1, 2012
Date Decided:      May 8, 2012

Do Not Publish

11