

**NUMBER 13-17-00443-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**TYLER SCHULTZ,**                                         **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                   **Appellee.**

**On appeal from the 117th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

Tyler Schultz appeals his conviction for murder, a first-degree felony. *See* TEX. PENAL CODE ANN § 19.02. On appeal, Schultz contends that his trial counsel was ineffective by failing to request a jury charge instruction at punishment on sudden passion. We affirm.

# I.  BACKGROUND

On November 17, 2016, Jeremiah Bates was fatally shot by Schultz in Corpus Christi, Texas.  According to the indictment, Schultz, "with intent to cause serious bodily injury to an individual, namely, Jeremiah Bates, commit[ted] an act clearly dangerous to human life, to-wit:  firing a firearm at Jeremiah Bates, that caused the death of said Jeremiah Bates . . . ."  Schultz testified that, on the morning of November 17, 2016, he was walking from his apartment to a clinic.  After walking about four miles, he came upon Bates, a mentally-ill homeless man, who was sitting on the sidewalk.  Schultz saw that Bates had a cigarette pack on him, and Schultz asked Bates for a cigarette.  This prompted Bates to yell at Schultz.  According to Schultz, he could not comprehend anything that Bates was yelling at him.  Schultz walked away and sat down next to a church across the street from where Bates was yelling.  At this point, Bates was in the middle of the street, with his back to oncoming traffic, and yelling at Schultz.  During this confrontation, Schultz stated that Bates exposed his penis twice.

The next few moments were disputed at trial.  Schultz alleged that Bates started approaching him and that he became afraid that Bates was going to sexually assault him.  However, an eyewitness testified that, though Bates took a few steps toward Schultz, it did not look like Bates was trying to make physical contact with him.  Another witness testified that she did not believe that Bates was being aggressive towards Schultz because Bates was yelling at "everything and everybody" and was just acting "crazy."  Schultz testified that Bates also screamed and yelled at a bus that passed by the intersection.

2

Schultz testified that when Bates allegedly began to approach him, he got up and fired two warning shots by Bates's feet. According to Schultz and the witnesses, these shots did not faze Bates or seem to scare him off. Witness testimony stated that, after the first shots, Schultz started walking toward Bates and shot directly at him—two bullets hit Bates, and he fell to the ground. According to witness testimony, Bates had his arms up when he was shot. Schultz immediately fled from the scene, hid the gun magazine behind an apartment building, and threw away the sweatshirt he had been wearing. A police officer apprehended Schultz four blocks from where he shot Bates. Schultz initially denied any involvement in the shooting. The gun used to shoot Bates was never recovered and Schultz claimed that he did not know what happened to the gun. In an interview with a detective, Schultz confessed to shooting Bates. Bates died from his injuries in the hospital two days after he was shot.

At the guilt/innocence phase of trial, the jury charge included the offense of murder and the lesser degree offense of manslaughter, as well as an instruction on self-defense. The jury found Schultz guilty of murder, a first-degree felony, and assessed punishment at twenty-five years' confinement. This appeal followed.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his sole issue, Schultz argues that he received ineffective assistance of counsel. Specifically, Schultz argues that his defense counsel was ineffective for failing to request an instruction on sudden passion during the punishment phase of the trial.

### A.    Applicable Law and Standard of Review

Individuals in a criminal prosecution are guaranteed the right to assistance of counsel by the Sixth Amendment to the United States Constitution and § 10 of Article 1

3

of the Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Lopez v. State*, 343 S.W.3d 137,142 (Tex. Crim. App. 2011). This right encompasses not merely the presence of a lawyer, but the effective assistance of that lawyer. *Id.* Nevertheless, this right does not mean perfect counsel, but rather the right to objectively reasonable representation. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) ("The right to effective assistance of counsel merely ensures the right to reasonably effective assistance." (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984))).

The United States Supreme Court and the Texas Court of Criminal Appeals have adopted a two-pronged test to determine whether a criminal defendant received ineffective assistance of counsel. *See, Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 54–55 (Tex. Crim. App. 1986); *Munoz v. State*, 24 S.W.3d 427, 433 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.). To establish that trial counsel was ineffective, an appellant must show that (1) his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Ex parte Martinez*, 330 S.W.3d 891, 900–01 (Tex. Crim. App. 2011); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). A reasonable probability is one sufficient to undermine confidence in the outcome of the trial. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

The appellant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813. This court will review counsel's effectiveness not by isolated acts or omissions, but by the totality of the

4

representation. *Id.* To demonstrate that counsel was ineffective, the appellant must overcome the strong presumption that the complained-of action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 100–101 (1955)). Unless the record shows that counsel's conduct was not the product of a strategic decision, "a reviewing court should presume that trial counsel's performance was constitutionally adequate unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *State v. Morales*, 253 S.W.3d 686, 696–97 (Tex. Crim. App. 2008) (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). The Texas Court of Criminal Appeals has noted that, in most cases, a silent record that does not clarify the reasons for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

"At the punishment stage of a [murder] trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d). The judge shall deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. "Defensive issues are not law applicable to the case under [Texas] Code of Criminal Procedure [Article] 36.14 unless and until the defendant raises the issue by a timely objection or request." *Newkirk v. State*, 506 S.W.3d 188, 191 (Tex. App.—Texarkana 2016, no pet.).

## B. Analysis

### 1. First *Strickland* Prong

Schultz complains that his defense counsel failed to request an instruction on sudden passion in the punishment charge. He contends that in light of the evidence brought forth at trial, he was entitled to the instruction. Schultz did not file a motion for new trial and raised his ineffective assistance claim for the first time on direct appeal. Therefore, the record is silent as to why Schultz's trial counsel chose to not request a sudden passion instruction in the punishment charge.

The first prong of *Strickland* requires Schultz to show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. This is demonstrated by a showing that the errors made by counsel were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution. *Id.* However, Schultz has not demonstrated how the actions by counsel constituted an error so serious as to offend the Sixth Amendment. Schultz contends that there cannot be any trial strategy for failing to request a sudden passion instruction. The record in this case is silent as to the reason why Schultz's trial counsel failed to request a sudden passion instruction at the punishment stage of trial. The record on direct appeal is usually insufficient to adequately reflect the failings of trial counsel. *Thompson*, 9 S.W.3d at 814–5. The Texas Court of Criminal Appeals ruled in *Thompson* that when the record provides no apparent explanation or motive behind counsel's actions, the appellate court should be particularly hesitant to declare counsel ineffective based upon a "single alleged miscalculation during what amounts to otherwise satisfactory representation." *Id.* at 814. Due to the undeveloped record, and without any explanation to the motives behind counsel's action, this Court refuses to speculate as to the trial strategy of Schultz's trial counsel. We further find that counsel's conduct was not "so outrageous that no competent

6

attorney would have engaged in it." *See Morales*, 253 S.W.3d at 696–97. Therefore, Schultz has failed to negate the strong presumption that this was a sound strategic decision.

### 2. Second *Strickland* Prong

The second prong of *Strickland* requires Schultz to show prejudice by demonstrating that there was a reasonable probability that, but for his counsel's action, the result would have been different. *Strickland*, 466 U.S. at 694. When the complained-of action is during the sentencing phase of trial, prejudice is established if the appellant demonstrates that his sentence was increased by the deficient performance of his trial counsel. *See Glover v. U.S.*, 531 U.S. 198, 200 ("if an increased prison term did flow from an error, the petitioner has established *Strickland* prejudice.").

However, "merely showing that a sudden-passion instruction would have given the jury another sentencing opinion is not enough to demonstrate prejudice under *Strickland*." *Newkirk*, 506 S.W.3d at 198. Schultz must establish that (1) if his counsel requested the sudden passion instruction that he would have received it and (2) that the jury would have imposed a lesser sentence after hearing the instruction. *See id.* Even supposing that Schultz was entitled to the sudden passion instruction, he has not established a reasonable probability that, had he received the instruction, the jury would have imposed a less harsh sentence.

Furthermore, "it is highly unlikely that a jury that had already rejected the appellant's claim that he reasonably believed that deadly force was immediately necessary to defend himself would nevertheless find in his favor on the issue of sudden passion." *Wooten v. State*, 400 S.W.3d 601, 609 (Tex. Crim. App. 2013); *see Chavez v.*

7

*State*, 6 S.W.3d 66, 73 (Tex. App.—San Antonio 1999, pet. ref'd) ("Because it is reasonable to presume that the evidence justifying the jury's finding against Chavez on self-defense would also justify a finding that Chavez was not acting under sudden passion, the record does not clearly confirm that trial counsel should have requested such instruction.").

To prove sudden passion, Schultz would have to prove that: (1) he acted under the immediate influence of passion, (2) his sudden passion was provoked by Bates, (3) he had no time to cool off, (4) he committed the murder before he had time to cool off, and (5) there was a causal connection between the provocation and the homicide. *See* TEX. PENAL CODE ANN. § 19.02(a); *Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2015). However, the jury in this case already rejected Schultz's claim that he reasonably believed deadly force was necessary; thus, it was unlikely to believe that when Schultz shot at Bates, he was under the immediate influence of passion that caused to him to lose control. *See Chavez*, 6 S.W.3d at 73 ("[E]xcept in rare instances, when the State's evidence is sufficient to overcome a claim of self-defense, it will also be sufficient to show the absence of sudden passion."); *see also Wooten*, 400 S.W.3d at 610 (concluding that a jury that rejected a self-defense claim that deadly force was immediately necessary would likely reject a claim that the defendant acted under an immediate influence of passion). Based on the evidence and record, the probability that the jury would have imposed a lighter sentence had it received a sudden passion instruction is extremely low. *See Chavez*, 6 S.W.3d at 73. Therefore, Schultz has not demonstrated the second prong of *Strickland* requiring him to show that, but for his counsel's actions, the result would have been different. *Strickland*, 466 U.S. at 694. We overrule Schultz's sole issue.

8

### III. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of July, 2019.